THE STATE OF OHIO, APPELLEE, *v.* BROWN, APPELLANT.

[Cite as State *v.* Brown (1988), 38 Ohio St. 3d 305.]

(No. 87-891—Submitted June 13, 1988—Decided August 31, 1988.)

*Arthur M. Ney, Jr.,* prosecuting attorney, *Christian J. Schaefer, Claude N. Crowe* and *Melba D. Marsh,* for appellee.

*Roxann H. Dieffenbach* and *Candace C. Greenham,* for appellant.

WRIGHT, J. Appellant appeals her aggravated murder convictions and death sentence. For the reasons set forth below, we affirm the convictions and find the death penalty appropriate.

I

The first of appellant's contentions that we address is that her constitutional and statutory rights were violated when the state prosecuted her for aggravated murder with a defective indictment. The indictment is alleged to be defective for two reasons: (1) the indictment was issued by a grand jury composed of nine people rather than the fifteen required by R.C. 2939.02; and (2) the indictment was secured without adequate evidence.

Crim. R. 6(A) states that a grand jury shall consist of nine members.[1] R.C. 2939.02 states that grand juries shall consist of fifteen people. R.C. 2939.20 requires twelve of fifteen people to agree before an indictment is issued.[2] Thus, a conflict exists between the rule and the statutes.

According to Section 5(B), Article IV, Ohio Constitution, where a conflict exists between a rule and statute, the rule prevails if the right involved is procedural. If the conflict involves a substantive right, the statute controls.

In *Wells v. Maxwell* (1963), 174 Ohio St. 198, 200, 22 O.O. 2d 147, 148, 188 N.E. 2d 160, 161, we held:

"* * * The manner by which an accused is charged with a crime, whether by indictment returned by a grand jury or by information filed by the prosecuting attorney, is strictly a matter of procedure, and a change in such a procedure does not deprive an accused of any substantial right or protection and thus does not constitute a violation of the ex post facto provisions of the Constitution."

Ohio appellate courts have interpreted *Wells* and held the number of persons on the grand jury is a procedural question rather than substantive. *State v. Wilson* (1978), 57 Ohio App. 2d 11, 11 O.O. 3d 8, 384 N.E. 2d 1300; *State v. Juergens* (1977), 55 Ohio App. 2d 104, 9 O.O. 3d 262, 379 N.E. 2d 602.

In our view, the number of jurors on a grand jury does not affect a substantive right. Accordingly, Crim. R. 6(A) controls the issue of how many grand jurors are needed to issue an indictment. R.C. 2939.02 and 2939.20 are superseded insofar as they conflict with this rule.

The record indicates nine people

---

[1] Crim. R. 6(A) provides:

"The judge of the court of common pleas for each county, or the administrative judge of the general division in a multi-judge court of common pleas or a judge designated by him, shall order one or more grand juries to be summoned at such times as the public interest requires. The grand jury shall consist of nine members, including the foreman, plus not more than five alternates."

[2] R.C. 2939.20 provides:

"At least twelve of the grand jurors must concur in the finding of an indictment. * * *"

were on Brown's grand jury. The size of the jury conformed to Crim. R. 6(A). Therefore, we hold the indictment by the grand jury was not defective in this case.

Appellant also contends the indictment was secured with inadequate evidence. In support of this claim, Brown argues there were no witnesses subpoenaed from the date Storey's body was found to the date the indictment was issued. Appellant suggests her indictment was based on mere hearsay and argues that hearsay should not be admissible in a grand jury proceeding.

This contention has no merit. The fact no one was subpoenaed does not mean no one testified before the grand jury. Moreover, we have previously held that the Rules of Evidence do not apply to grand jury proceedings. See *Turk* v. *State* (1836), 7 Ohio 240, 242. See, also, Evid. R. 101(C)(2). Hearsay is therefore admissible in a grand jury proceeding.

Finally, Brown argues in effect that the trial court should have granted her motion to inspect part of the record and the grand jury testimony. To view such testimony, the defendant must show a particularized need. *State* v. *CECOS Internatl., Inc.* (1988), 38 Ohio St. 3d 120, 526 N.E. 2d 807; *State* v. *Greer* (1981), 66 Ohio St. 2d 139, 20 O.O. 3d 157, 420 N.E. 2d 982, paragraph two of the syllabus. Appellant contends the transcript would indicate whether the indictment was properly issued, and therefore she has a particularized need.

Before we may disturb the trial court's ruling denying access to the grand jury testimony, we must find an abuse of discretion. "Abuse of discretion" has been defined to mean an attitude by the trial court that is unreasonable, arbitrary, or unconscionable. *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 16 O.O. 3d 169, 404 N.E. 2d 144. Brown provides no indication as to how the court abused its discretion. Our independent review of the record does not reveal any attitude by the trial court that was unreasonable, arbitrary, or unconscionable. Therefore, we reject appellant's contentions.

## II

Appellant next claims the trial court erred by not granting her motion to join her trial with that of co-defendant Alton Coleman. Brown asserts that, pursuant to Crim. R. 14, joint trials are permissible upon a showing of good cause. Good cause, according to appellant, was shown by defendants' waiver of their rights to separate trials and their belief that the evidence would be better presented in a joint trial. Appellant also argued that her trial strategy would be enhanced by a joint trial.

Crim. R. 14 provides, in pertinent part:

"When two or more persons are jointly indicted for a capital offense, each of such persons shall be tried separately, unless the court orders the defendants to be tried jointly, upon application by the prosecuting attorney or one or more of the defendants, and for good cause shown."

The rule clearly indicates that jointly indicted defendants *shall* be tried separately unless one or more of the defendants can show good cause. "Good cause" is not defined in the rule. Therefore, the ordinary and natural definition of the phrase applies. Black's Law Dictionary (5 Ed. 1979) defines "good cause" as "[s]ubstantial reason, one that affords legal excuse." *Id.* at 622. The determination of what constitutes good cause can be made only on a case-by-case basis.

The question before us, therefore, is whether waiver of the right to sepa-

rate trials and alleged enhancement of trial strategy constitute a substantial reason to join trials. The court below was not persuaded that good cause was demonstrated. The trial court's decision cannot be disturbed absent a showing of abuse of discretion. Since we do not believe the trial court's decision was unreasonable, we reject appellant's arguments on this issue.

## III

In her next proposition of law, Brown argues the trial court erred by not sequestering the potential trial jurors during voir dire. Brown contends the jurors were "contaminated" when they were allowed to listen to the questioning of other prospective jurors.

The state essentially argues against sequestration to prevent repetitious questioning. The state suggests that time and resources could be saved by questioning the jurors *en masse.*

"The determination of whether a *voir dire* in a capital case should be conducted in sequestration is a matter of discretion within the province of the trial judge." *State* v. *Mapes* (1985), 19 Ohio St. 3d 108, 19 OBR 318, 484 N.E. 2d 140, paragraph three of the syllabus. The trial court's determination will not be disturbed "absent a showing of abuse of discretion." *Mapes, supra,* at 115, 19 OBR at 324, 484 N.E. 2d at 146.

We fail to see how the trial court abused its discretion by denying appellant's motion. The state's argument provided the trial court with a reasonable basis to conclude that sequestration was unnecessary. There was no abuse of discretion and, therefore, we reject this argument.

## IV

Brown next argues that her rights guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States were violated when the state introduced statements made after she had requested an attorney.

After appellant was apprehended in Evanston, Illinois, she requested an attorney. While being transported to Chicago, Brown asked FBI agents several questions regarding her family, what she was charged with, and what was going to happen to her. When appellant reached Chicago, she was placed in an interviewing room. The agents asked appellant if she wanted to talk to them and she said yes. The agents informed Brown she had the right to an attorney. Brown indicated she was willing to talk so long as she could stop at any time.

Questioning then continued. Brown informed the agents that she and Alton Coleman had lured Tamika Turks and Annie Hillard to a field. She described the rape and murder of Turks and the rape and attempted murder of Hillard and said, "I helped him done it." These statements were admitted at trial.

Once a criminal defendant has invoked the right to an attorney during interrogation, further questioning must cease until the defendant has counsel. *Edwards* v. *Arizona* (1981), 451 U.S. 477. Where the defendant has invoked the right to counsel, but subsequently relinquishes that right, questioning may resume. *Oregon* v. *Bradshaw* (1983), 462 U.S. 1039. In *Bradshaw,* the Supreme Court of the United States explained at 1045-1046:

"Although ambiguous, the respondent's question in this case as to what was going to happen to him evinced a willingness and a desire for a generalized discussion about the investigation; it was not merely a necessary inquiry arising out of the incidents of the custodial relationship. It could

reasonably have been interpreted by the officer as relating generally to the investigation. That the police officer so understood it is apparent from the fact that he immediately reminded the accused that '[y]ou do not have to talk to me,' and only after the accused told him that he 'understood' did they have a generalized conversation. * * *"

Although Brown had earlier· invoked the right to counsel, her subsequent inquisitiveness clearly revealed a desire to discuss the investigation. It is not disputed that Brown was again informed of her right to counsel and knew she could stop the interrogation at any time. Nevertheless, Brown chose to initiate on her own volition a new colloquy with the authorities. For these reasons, we agree with the trial court's finding that she waived her right to counsel before the interrogation at issue. There was no violation of the *Edwards* rule. Appellant's assertion is without merit.

## V

In her next proposition of law, appellant claims her right to a fair trial was violated when the trial court refused to suppress identification testimony and physical evidence. Appellant sought to suppress the identification testimony of Wendell Bea, Ralph Welch, and Annie Hillard and physical evidence from other crimes alleged to have been committed by Coleman and Brown.

Appellant contends essentially (1) that each identification was based on procedures that were impermissibly suggestive, and/or (2) that the probative value of the identification testimony was outweighed by the prejudicial effect of the evidence. Appellant also contends in effect that the prejudicial value of the physical evidence of other acts outweighed the probative value of the evidence and hence it should have been excluded.

Where a witness has been confronted by a suspect before trial, that witness' identification of the suspect will be suppressed if the confrontation procedure was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under the totality of the circumstances. *Manson* v. *Brathwaite* (1977), 432 U.S. 98.

The testimony of Wendell Bea indicated he saw Tonnie Storey with Alton Coleman and a woman. There was no pretrial confrontation. Indeed, Bea did not "identify" Brown. Therefore, Brown cannot claim there was a confrontation procedure that was unnecessarily suggestive. Moreover, the prejudicial effect of the testimony was minimal; the probative value of the evidence was not outweighed by prejudice. The testimony was properly admitted by the trial court.

Ralph Welch, an alleged attack victim of Brown and Coleman, was unable to identify appellant from a police photograph. When he saw her in person in a courthouse corridor, however, he was able to identify her as his assailant. Appellant apparently claims the identification was unnecessarily suggestive because, at the time of the confrontation, she was being followed by television cameras. Appellant also attempts to establish that the probative value of the identification was outweighed by the prejudicial effect of the testimony.

The state points out that the confrontation was not arranged by police but, rather, was purely accidental. Therefore, appellee argues there was no unnecessarily suggestive procedure involved.

The rationale for excluding a tainted pretrial identification is to protect the defendant from misconduct by the state. In the facts before us, there was no state action. Hence, *Manson* is inapplicable here. The alleged suggestiveness of the identification,

therefore, goes to weight and reliability of the testimony rather than admissibility. Moreover, any prejudicial effect of the testimony could have been cured by effective cross-examination. The testimony was therefore properly admitted.

Ten-year-old Annie Hillard, an alleged rape victim of Coleman and Brown and a witness to the murder of Tamika Turks, was unable to positively identify appellant in a line-up or from a photograph. At some point between the attack and appellant's trial, Hillard saw appellant's picture in a newspaper and identified Brown as her assailant.

Brown apparently contends this identification was unduly suggestive and the probative value of the testimony was outweighed by its prejudicial effect. Once again, we observe no state action in the independent identification of Brown by Hillard. *Manson* does not apply here. We further note that the prejudicial effect of the testimony was minimal and that an effective cross-examination could have minimized any prejudicial effect. Therefore, we find this testimony admissible.

Within this proposition of law, appellant complains that the state presented "massive amounts" of physical evidence of other, unrelated crimes allegedly committed by appellant. Appellant does not, however, specify what evidence was inadmissible. It is presumed Brown contends all the physical evidence of other acts was inadmissible. If the prejudicial effect of this evidence outweighed its probative value, the evidence should have been excluded.

Our independent review of the record indicates the probative value of the evidence questioned was not outweighed by its prejudicial effect. Indeed, the evidence was highly probative in that it tended to establish that appellant engaged in a course of conduct designed to kill two or more persons. We believe the prejudicial effect of the questioned evidence was minimal. Therefore, we reject these contentions.

## VI

Appellant makes three related arguments[3] concerning the charge that Brown engaged in a course of conduct involving the purpose to kill two or more persons. The gravamen of appellant's arguments is that the trial court erred by denying her motions to limit or exclude the state's "course of conduct" evidence. Introduction of evidence of other crimes separate and apart from those alleged in the indictment, according to appellant, denied her a fair trial. Indeed, appellant contends "the functions of the grand jury is [*sic*] usurped by the state and the defendant is denied a fair trial" when the state introduces such evidence.

The state argues that appellant did not object to the admission of the evidence at trial, and thus failed to preserve the alleged error. In the alternative, the state argues that the evidence was properly admitted to establish the R.C. 2929.04(A)(5) "course of conduct" charge and that the statute is valid.

Our review of the record indicates appellant filed several motions *in limine* to exclude the "course of conduct" evidence. These motions were denied. Appellant did not object to the admission of the evidence at trial.

A denial of a motion *in limine* does

---

[3] Brown claimed the trial court erred by denying her motions *in limine* to exclude the evidence of other acts, erred by admitting the evidence at trial, and erred by not finding the statute unconstitutional.

not preserve error for review. A proper objection must be raised at trial to preserve error. *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 259, 15 OBR 379, 396, 473 N.E. 2d 768, 787. This court, therefore, is not required to address this issue. Nevertheless, in the interest of justice, we find the questioned evidence was properly admitted for the limited purpose of establishing a course of conduct by appellant that involved the purpose to kill two or more persons.

We also note R.C. 2929.04(A)(5) is not unconstitutionally vague, as appellant suggests. As the United States Supreme Court recently noted, "* * * [o]bjections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Maynard* v. *Cartwright* (1988), 486 U.S. ___, 100 L. Ed. 2d 372, 380, 108 S. Ct. 1853, 1858. The questioned statute clearly conveys what conduct is at risk. For these reasons, we find appellant's arguments baseless.

## VII

Appellant next contends the trial court abused its discretion by denying her motion for a mistrial. The motion was made in response to the introduction of evidence that was not disclosed by the prosecution before discovery was terminated.

The first incident involved photographs of a car, earring, and blouse that were relevant to the "course of conduct" charge. The prosecution contends the evidence was not received until mid-trial. When the photographs were offered for admission, the trial court gave the defense three days to examine the evidence and told it to raise any objections the following Monday. The defense subsequently objected on the ground that the evidence involved a murder other than that of Tonnie Storey, but failed to claim the prosecution violated discovery rules.

Error that is not specifically objected to at trial is waived. *State* v. *Coleman* (1988), 37 Ohio St. 3d 286, 525 N.E. 2d 792. Although an objection was made on other grounds, the discovery violation alleged here was not preserved for review. In the interest of justice, however, we note that the defense had ample opportunity to examine the evidence prior to its admission. Therefore, we find this claim has no merit.

The second incident involved admission of a sundress, exhibits of shoeprints, and photographs. When this evidence was introduced at trial, the defense moved for a mistrial because the evidence had not been disclosed prior to the cutoff date for discovery. The state argued that the defense knew of the evidence because the state had provided pictures of the evidence to counsel. Appellee further argued that the evidence was in Toledo, Ohio, and could not be produced without great expense on the part of the state. The trial court denied appellant's mistrial motion.

We cannot disturb the trial court's ruling absent a showing of abuse of discretion. As noted above, "abuse of discretion" has been defined as an attitude by the trial court that is unreasonable, arbitrary, or unconscionable. *Maurer, supra,* at 250, 15 OBR at 389, 473 N.E. 2d at 780; *Adams, supra.* There were several different investigations of appellant's conduct. Presumably, the expense of protecting and delivering the evidence was high. The defense obviously knew this type of evidence existed before trial. The above indicates the trial court's ruling was based on valid reasoning. There-

fore, we find no abuse of discretion and reject this proposition of law.

## VIII

Appellant next claims her convictions of aggravated murder and aggravated robbery in the Storey homicide were against the manifest weight of the evidence. Appellant claims that the only evidence admitted was circumstantial and that the evidence did not rebut alternative theories supporting innocence. Accordingly, appellant requests reversal of her convictions.

The state contends its evidence against Brown was both direct and circumstantial. The direct evidence in the murder of Storey consisted of fingerprints and an admission of guilt, according to appellee. The circumstantial evidence consisted of testimony establishing Storey was last seen with a woman matching Brown's description, that Storey's body was badly decomposed when discovered, and that it was very unlikely Storey died of natural causes. The state notes that Storey's watch, ring, shoes, and blouse were missing when her body was found. This evidence, according to the state, establishes Storey was murdered and robbed by Brown.

In *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 10 O.O. 3d 340, 383 N.E. 2d 32, syllabus, this court held "[a] reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all of the elements of an offense have been proved beyond a reasonable doubt." Therefore, in reviewing a claim that a jury verdict was against the weight of the evidence or that the evidence was insufficient, a reviewing court's duty is to review the record to determine whether there was sufficient evidence for the jury to find defendant guilty beyond a reasonable doubt.

However, as was recognized in *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, 160, 66 O.O. 2d 351, 352, 309 N.E. 2d 897, 899, "[i]t is settled that where circumstantial evidence alone is relied upon to prove an element essential to a finding of guilt, it must be consistent only with the theory of guilt and irreconcilable with any reasonable theory of innocence." Therefore, if the evidence in a circumstantial evidence case is as consistent with a theory of innocence as with guilt, the doubt must be resolved in favor of the theory of innocence. *Id.*

Our independent review of the record establishes that the state produced direct and circumstantial evidence of appellant's guilt. The fingerprints are direct evidence that appellant was connected to the crime. Brown's statements to Annette Rocquemore that she committed the crime "for her [Storey's] clothes" and that she "had to do what [she] had to do" constitute direct evidence that tends to establish Brown's guilt. The circumstantial evidence that Storey was last seen with Coleman and a woman matching Brown's description, that Storey probably did not die of natural causes, and that Brown participated in other, very similar acts strengthens the case against Brown.

We find substantial evidence existed from which the jury could have determined beyond a reasonable doubt that Brown committed the crimes alleged. This proposition of law lacks merit.

## IX

Appellant next claims that the trial court abused its discretion by denying her motion for a change of venue.

The trial court held a hearing on the motion for change of venue. Appellant introduced various exhibits, including videotapes, audiotapes, news-

paper articles, and ratings reports.[4] From this evidence, the defense claimed appellant received pervasive publicity in the Cincinnati area and that juror bias should have been conclusively presumed. See *Sheppard* v. *Maxwell* (1966), 384 U.S. 333. The trial court deferred ruling on the motion until after voir dire. At the time, the court denied the motion, presumably because the empaneled jury was found to be fair and impartial.

The state argues appellant's evidence of pretrial publicity and the jury's knowledge thereof did not call for a change of venue. Citing *Murphy* v. *Florida* (1975), 421 U.S. 794, and *Dobbert* v. *Florida* (1977), 432 U.S. 282, the prosecution contends that extensive publicity, including a general knowledge within the community of the charges against the accused, does not alone require a change of venue. Appellant had to show, according to appellee, that a fair trial could not be held in Cincinnati.

Crim. R. 18(B) provides that a change of venue is to be granted if it appears that a fair and impartial trial cannot be conducted. The procedure for seating a jury is controlled by Crim. R. 24(B), which provides that a previously formed opinion is not a ground for disqualification as long as the court is satisfied that the jury can remain impartial.[5]

The record indicates the defense did not challenge for cause any of the jurors seated. Appellant apparently believed the jurors selected could be impartial. Moreover, appellant's evidence indicates merely that the community was aware of the charges against Brown. There is little evidence a fair trial could not be conducted in Cincinnati. The trial court had a reasonable basis to support its ruling and, therefore, we do not believe appellant satisfied the burden of establishing abuse of discretion. We reject this proposition of law as baseless.

## X

In her next proposition of law, appellant claims the admission of videotaped testimony given by Brown

---

[4] This evidence is missing from the record. It is established in Ohio that, in the absence of a record, the proceedings at trial are presumed correct. *State* v. *Summers* (1981), 3 Ohio App. 3d 234, 3 OBR 265, 444 N.E. 2d 1041; *State* v. *Findlay* (1973), 39 Ohio App. 2d 166, 68 O.O. 2d 357, 317 N.E. 2d 219.

[5] Crim. R. 18(B) provides in pertinent part:

"Upon the motion of any party or upon its own motion the court may transfer an action to any court having jurisdiction of the subject matter outside the county in which trial would otherwise be held, when it appears that a fair and impartial trial cannot be held in the court in which the action is pending."

Crim. R. 24(B) provides:

"A person called as a juror may be challenged for the following causes:

"* * *

"(9) That he is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

"* * *

"(14) That he is otherwise unsuitable for any other cause to serve as a juror.

"The validity of each challenge listed in this subdivision shall be determined by the court."

in the prosecution of Alton Coleman for another murder violated her Fifth Amendment rights, her Sixth Amendment rights, and the Rules of Evidence.

The Fifth Amendment provides that "no person shall be * * * compelled in any criminal case to be a witness against himself." Appellant apparently contends the videotaped testimony given in Coleman's trial was "used against her" in the Storey trial.

It has been held that the Fifth Amendment does not apply to "the ordinary witness at a trial or before a grand jury who is subpoenaed, sworn to tell the truth, and obligated to answer on the pain of contempt, unless he invokes the privilege and shows that he faces a realistic threat of self-incrimination. The answers of such a witness to questions put to him are not compelled within the meaning of the Fifth Amendment unless the witness is required to answer over his valid claim of the privilege." *Minnesota* v. *Murphy* (1984), 465 U.S. 420, 427.

It is clear that appellant had the right to remain silent and did not have to testify at Coleman's trial. Nevertheless, when appellant was asked by the judge at Coleman's trial, "Do you wish to testify? You have discussed it with your attorney and you wish to testify in this cause?", she replied, "Yes, I do." Appellant volunteered the testimony; the state did not compel her to testify against herself.

Appellant apparently contends the state compelled her to testify in the case before us by introducing former testimony into evidence.[6] Neither precedent nor public policy supports this reasoning. We reject this proposition of law.

---

[6] It is irrelevant whether the testimony was by deposition, transcript, or videotape.

Appellant also claims a violation of her Sixth Amendment right to counsel. Appellant does not dispute that she did have the advice of one of her attorneys from the Walters murder trial. Appellant, however, claims that her attorneys in the case at bar did not advise her on the ramifications of her testimony in the Walters murder trial and, therefore, the testimony should not be used against her in the Storey trial.

This argument lacks merit. The judge in the Walters trial asked Brown, "Do you wish to testify knowing that any testimony you give could be used against you?" Appellant answered affirmatively. It clearly appears, therefore, that appellant waived her Sixth Amendment right. Furthermore, we believe any attorney could have advised appellant not to give incriminating testimony. The fact that the trial attorneys in the Storey case were not present is unimportant.

Finally, appellant contends the admission of the videotaped testimony violated the Rules of Evidence. Appellant argues the testimony was character evidence and should have been excluded because she had not placed her character in issue. Although the testimony may have had some bearing on appellant's character, its primary purpose was to establish that appellant engaged in a course of conduct with the purpose of killing two or more persons. It was therefore properly admitted.

For the reasons stated above, we reject appellant's proposition of law.

## XI

Appellant next argues that the state made improper remarks during closing argument that prejudiced her right to a fair trial.

The remarks alleged to be improper include (1) arguments favoring

imposition of the death penalty during the guilt phase of the trial; (2) characterizations of the appellant as a monster; (3) references to the appearance and demeanor of appellant; and (4) insults directed at defense counsel.[7]

As a general rule, a prosecutor is entitled to a certain degree of latitude during closing argument. *State* v. *Liberatore* (1982), 69 Ohio St. 2d 583, 589, 23 O.O. 3d 489, 493, 433 N.E. 2d 561, 566. In *State* v. *Smith* (1984), 14 Ohio St. 3d 3, 4, 14 OBR 317, 318, 470 N.E. 2d 883, 885, we held "[t]he test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant."

In this case the prosecutor made the following remarks during the guilt phase of trial: "First, what we have presented to you to convince you that that person should die in the electric chair, which from day one * * * we told you we would be looking at you * * *." "The evidence which you saw and you heard * * * cries out for the death of that person there * * *."

---

[7] Appellant also refers to an exchange between the defense and prosecution where the prosecutor attempted to give a personal account concerning the discovery of Brown's admission to Annette Rocquemore. In an attempt to attack Rocquemore's credibility, defense counsel, during closing argument at the guilt phase, said, "Now I wonder how they found that out?" During closing argument, the prosecution attempted to explain how it found out about Rocquemore's statement. The defense objected and the prosecution said, "Listen to him object. He asked the question. * * * They ask a question but they can't stand the answer. * * * Who asked the question, how did the prosecutor find out about the Rocquemore statement? Who is it that doesn't want that answered for you, ladies and gentlemen?"

As a general rule, counsel should not comment on matters not at issue in the trial. References to the death penalty during the guilt phase were condemned by the United States Supreme Court in *Darden* v. *Wainwright* (1986), 477 U.S. 168. Since we believe discussion of the death penalty was irrelevant here, we hold it was erroneous for the prosecution to have made the remarks quoted above.

The next question is whether the prosecutor's remarks prejudiced the accused. The remarks did not urge the jury to disregard the evidence and convict the appellant solely to impose the death sentence. Although the remarks were misplaced, we do not believe they deprived appellant of a fair trial. The error was clearly harmless beyond a reasonable doubt.

Appellant also claims the prosecutor committed prejudicial error by referring to her as a monster. Where a prejudicial remark is invited by defense counsel, the United States Supreme Court has held the accused is not deprived of due process. *Darden* v. *Wainwright, supra.*

In this case, defense counsel at-

None of the above remarks was permissible. Neither the defense nor the prosecution may refer to evidence that is not in the record. See *People* v. *Watson* (1981), 94 Ill. App. 3d 550, 418 N.E. 2d 1015. We note, however, that the defense initiated the exchange by asking the jury, "Now I wonder how they found that out?" By doing such, the defense opened the door to the prosecution's reply.

The record also indicates that defense counsel did not object to these remarks made by the state. Since a proper objection was not made at trial, any error committed was not preserved for our review. Nevertheless, any error that was committed was clearly harmless beyond a reasonable doubt.

tempted to shift the blame from Brown to co-defendant Coleman. During closing argument, defense counsel referred to Coleman as a "slick talking monster." The state responded by arguing Brown was guilty and that she was the monster who committed the crime. We do not believe the prosecutor erred to the detriment of appellant because the comment was invited by defense counsel.

Appellant also objects to references concerning her appearance and claims the state committed prosecutorial misconduct by making such references. The questioned comment appears to be the remark that appellant "parade[d] in here day after day in a fresh outfit" and that "[w]e know what value she places on her clothing and her appearance." A defendant's face and body are physical evidence. The prosecution may, of course, comment on the accused's appearance. Even if the remarks were improper, we fail to see how the evidence was prejudicial. The claim that the above constitutes prejudicial error, and that the verdict should be reversed, is baseless.

Finally, appellant claims the prosecution indulged in prosecutorial misconduct by insulting defense counsel during summation. The alleged insults included remarks that counsel followed a "dartboard approach" to defense, that counsel talked out of both sides of the mouth, and that counsel's theory of the case was "baloney."

We have previously recognized that inflammatory and purely derogatory comments are improper. *State* v. *Liberatore, supra.* This precedent, however, does not mean the prosecution cannot be colorful or creative. What is not permitted are comments that are purely abusive. Otherwise, counsel for both parties are afforded wide latitude during closing argument. In our view, the above remarks were permissible. Thus, we reject this proposition of law.

## XII

Appellant argues in her next proposition of law that a trial court may submit two separate aggravated murder charges to the jury for the murder of one person but may impose the death sentence for only one of the charges. Indeed, R.C. 2941.25 proscribes conviction for two or more crimes that are allied offenses of similar import.[8]

Case precedent establishes that the state may submit to the jury two crimes that are allied offenses of similar import. However, the law prohibits a conviction of both crimes. *State* v. *Osborne* (1976), 49 Ohio St. 2d 135, 3 O.O. 3d 79, 359 N.E. 2d 78.

In this case, the court submitted two charges of aggravated murder to the jury. It is undisputed the crimes were allied offenses of similar import. The jury returned a guilty verdict on both. Ultimately, the court sentenced defendant on both charges. This was error.

The next question is whether the defendant was prejudiced by this er-

---

[8] R.C. 2941.25 provides:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct. constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

ror. The error was merely procedural in nature and did not involve any substantial right. In our view, the error was harmless beyond a reasonable doubt. Therefore, we reject this contention.

### XIII

Appellant next argues that the jury instructions in the guilt and sentencing phases were incorrect as a matter of law. Consequently, appellant seeks a new trial.

At the conclusion of the guilt phase of the trial, the court delivered the following instruction on the criminal liability of aiders and abettors:

"Now, if you find beyond a reasonable doubt that Debra Denise Brown purposely aided, helped, assisted, encouraged or directed herself with another in the commission of aggravated robbery * * *, she is to be regarded as if she were the principal offender and is just as guilty as if she had personally performed every act constituting the offense.

"When [2] or more persons have a common purpose to commit a crime and one does one part and a second performs another, those acting together are equally guilty of the crime * * *.

"* * *

"No person may be convicted of aggravated murder unless she is specifically found to have intended to cause the death of another."

Appellant cites *Enmund* v. *Florida* (1982), 458 U.S. 782, for the proposition that it is impermissible to impose the death penalty on "one who aids and abets a felony in the course of which a murder is committed by others, but who does not himself kill, attempt to kill or intend that a killing take place."

Appellant's analysis of the law is correct. However, application of *Enmund* to the facts herein is clearly misplaced. The court clearly instructed the jury that no person may be convicted of aggravated murder without a showing of intent. This instruction, therefore, was proper.

At the conclusion of the mitigation hearing, the trial court gave the following instruction:

"The final decision as to whether the death penalty shall be imposed upon the defendant rests upon this Court after the Court follows certain additional procedures required by the laws of this state. Therefore, even if you recommend the death penalty, the law requires the Court to decide whether or not the defendant, Debra Denise Brown, will actually be sentenced to death or to life imprisonment."

Appellant cites *Caldwell* v. *Mississippi* (1985), 472 U.S. 320, for the proposition that the Eighth Amendment makes it "constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere."

It has been the position of this court that, so long as the charge of the trial court is not inaccurate or misleading, a statement within the charge explaining Ohio's death penalty statute is not unconstitutional. *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 22 OBR 203, 489 N.E. 2d 795. The record indicates the court did not *mislead* the jury; it merely reported what Ohio's death penalty statute requires. Furthermore, the record contains no prosecutorial argument downgrading the responsibility of the jury in imposing the death penalty. Therefore, this argument is rejected.

### XIV

Appellant next contends she was denied effective assistance of counsel

at various stages of the proceedings below. Specifically, Brown claims counsel failed to timely object to the "other acts" evidence presented by the state and failed to request sufficient time to prepare for the sentencing stage of trial.

*Strickland* v. *Washington* (1984), 466 U.S. 668, is the seminal case on this issue. The United States Supreme Court held at 687:

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."

It is also recognized that a defendant is not deprived of effective assistance of counsel when counsel chooses, for strategical reasons, not to pursue every possible trial tactic. *State* v. *Johnson* (1986), 24 Ohio St. 3d 87, 24 OBR 282, 494 N.E. 2d 1061.

The contention that counsel was ineffective by not objecting to "other acts" evidence is without merit. The testimony was clearly admissible to establish the "course of conduct" claim. Counsel did not err by not objecting to evidence known to be admissible.

The claim that counsel was ineffective by securing only three days to prepare for the mitigation hearing is baseless. This court has upheld as reasonable a three-day preparation period in *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 31 OBR 273, 509 N.E. 2d 383. In *Darden* v. *Wainwright*, *supra*, a half-hour gap between guilt and sentencing phases was upheld by the United States Supreme Court. We also note that it is speculative whether the trial judge would have granted more time had counsel felt the need to request it. Defense counsel did not err; therefore, we conclude appellant was not deprived of effective assistance of counsel.

## XV

In her next proposition of law, appellant claims the court of appeals abused its discretion by remanding the action to the trial court to clarify the status of Specification Five to Count One of the indictment.[9]

Specification Five to Count One of the indictment was, apparently, improperly worded. The trial court did not instruct the jury on Specification Five, it was omitted from the verdict forms, and the record reflects that neither side mentioned it in addressing the jury. The trial record, however, did not reveal that the specification had been officially stricken.

On appeal, the appellate court remanded the case for clarification pursuant to App. R. 9(E). Accordingly, the trial court held a hearing with

---

[9] Specification Five to Count One of the indictment provides:

"The grand jurors further find and specify that the offense alleged in the first count of this indictment was committed by the said Debra Denise Brown * * * while she was acting as the principal offender or with the prior calculation and design as specified in Section 2929.04(A)(7) of the Ohio Revised Code."

counsel for both parties present. A supplement to the record was issued that stated the specification was dismissed before trial because it was invalid.

App. R. 9(E) provides, in pertinent part:

"* * * If anything material to either party is omitted from the record by error or accident * * * the court of appeals * * * may direct that the omission * * * be corrected * * *." Since the record was silent on the status of Specification Five, the appellate court properly remanded the action. We find no abuse of discretion here.

## XVI

Finally, we address appellant's contention that Ohio's capital punishment statute is unconstitutional. Although none of appellant's arguments has merit, we address each in the interest of justice.

### A

Appellant argues the Ohio capital punishment statute violates the prohibition against cruel and unusual punishment under the Eighth Amendment to the Constitution of the United States. For the reasons stated in *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E. 2d 264, certiorari denied (1985), 472 U.S. 1032, we hold the Ohio capital punishment statute does not violate the Eighth Amendment.

### B

Appellant contends the Ohio capital punishment statute places a defendant in double jeopardy by allowing reintroduction of evidence regarding aggravating circumstances at the penalty phase of the trial. For the reasons articulated in *State* v. *Rogers* (1985), 17 Ohio St. 3d 174, 17 OBR 414, 478 N.E. 2d 984, vacated on other grounds (1985), 474 U.S. 1002, we hold the capital punishment statute does not place a defendant in double jeopardy by allowing reintroduction of evidence regarding aggravating circumstances at the penalty phase of trial.

### C

Appellant's third claim is that prior calculation is not required for all capital murder cases in Ohio and, therefore, the Ohio capital punishment statute does not comply with the requirements of *Enmund* v. *Florida, supra.* This argument was rejected in *State* v. *Jenkins, supra,* at 170-171, 15 OBR at 316-317, 437 N.E. 2d at 274-275; and *State* v. *Mapes* (1985), 19 Ohio St. 3d 108, 19 OBR 318, 484 N.E. 2d 140.

### D

Appellant next claims that a separate jury should be used for each trial phase. In *Jenkins, supra,* and in *State* v. *Maurer, supra,* we rejected this argument and held the death penalty statute constitutional.

### E

Appellant next contends that the capital punishment statute violates the effective-assistance-of-counsel provision of the Ohio and United States Constitutions by allowing the state to open and close during final arguments at the penalty phase. This argument was addressed and rejected by this court in *Jenkins, supra.*

### F

Appellant also contends the Ohio capital punishment statute violates the equal protection and due process provisions of the Ohio and United States Constitutions by permitting arbitrary prosecution for the death penalty by the state. Appellant also argues in this

proposition that defendants accused of felony murder are faced with harsher treatment than defendants accused of premeditated murder. These arguments were addressed and rejected in *Jenkins, supra; State* v. *Barnes* (1986), 25 Ohio St. 3d 203, 25 OBR 266, 495 N.E. 2d 922; and *State* v. *Buell, supra.*

## G

Appellant next contends the Ohio capital punishment statute is unconstitutional because it fails to set forth a constitutionally adequate standard of proof to be applied in determining mitigating factors, and because there is no standard by which the jury is to balance the aggravating circumstances against the mitigating factors. We rejected these arguments in *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 23 OBR 13, 490 N.E. 2d 906; *Buell, supra;* and *Jenkins, supra.*

## H

Appellant finally contends the Ohio capital punishment statute fails to assure adequate appellate analysis of whether the aggravating circumstances outweigh the mitigating factors, and whether the death sentence imposed is excessive or disproportionate. We found these same contentions to be without merit in *Buell, supra,* and *State* v. *Brooks* (1986), 25 Ohio St. 3d 144, 25 OBR 190, 495 N.E. 2d 407.

## XVII

Independent weighing of the aggravating circumstances against the mitigating factors reveals the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. Indeed, we find few if any mitigating factors in the case before us.

Pursuant to our statutory duty, we now assess whether imposition of the death penalty in this case is disproportionate or excessive when compared to other cases where we have imposed the death penalty. In *State* v. *Jenkins, supra,* we imposed capital punishment for robbery-homicide as well. Therefore, we find imposition of the death penalty is not disproportionate in this case.

Accordingly, we uphold the appellant's convictions and sentence of death and affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS and H. BROWN, JJ., concur.