OPINION
{¶ 1} Defendant-appellant, Justin M. Berrien, appeals a decision of the Clinton County Court of Common Pleas convicting him of attempted murder, aggravated robbery, and felonious assault and sentencing him to 10 years in prison. For the reasons outlined below, we affirm in part and reverse in part.
 {¶ 2} In the early morning hours of March 1, 2005, the victim, James McCandless, left his residence at Foxglove Apartments in Wilmington to run errands. While crossing the parking lot, the victim noticed an unfamiliar man walking in his direction. The two greeted one another and continued on their respective courses. Once the victim reached his truck and climbed behind the wheel, the same unknown man re-approached. Standing by the victim's open truck door, the man asked for a cigarette. After the victim responded that he did not smoke, the unknown man brandished a large hunting knife and demanded money. The victim resisted, and in the ensuing struggle received multiple puncture wounds to the abdomen and lacerations to the face, neck, and left forearm. The assailant fled, and the victim drove his truck to the nearby resident manager's office to seek assistance.
 {¶ 3} Sergeant Ron Fithen and Patrol Officers Sherry Hall and Patrick Black of the Wilmington Police Department responded to the apartment complex around 6:30 a.m. The victim described his attacker as a light-skinned black male wearing a dark-colored, hooded sweatshirt and dark pants. The victim directed the officers to the precise location where the attack occurred in the parking lot. While investigating the area, Fithen and Black tracked a solitary set of footprints leading away from the crime scene. The footprints, which had a distinctive "wave design" according to Fithen, led to an apartment building at 120 Reba Drive. While tracking the footprints to this destination, Fithen saw appellant emerge from the building. Noting that the footprints leaving the building matched those they had just tracked up to it, and observing that appellant fit the assailant's description, the officers took appellant into custody for questioning.
 {¶ 4} On March 10, 2005, a grand jury returned a three-count indictment against appellant. The charges included one count of attempted murder in violation of R.C. 2903.02(B) and 2923.02, a first-degree felony; one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a first-degree felony; and one count of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony. Appellant pled not guilty. On March 17, 2005, appellant sought discovery and a bill of particulars. The state submitted discovery on March 29, 2005 and filed the bill of particulars on March 31, 2005.
 {¶ 5} The trial court initially set the matter for jury trial to commence on May 16, 2005. On April 15, 2005, appellant moved to suppress certain statements he had made to police officers during his arrest. On April 25, 2005, the trial court conducted a hearing on the motion, taking the matter under advisement and continuing the jury trial to July 18, 2005 with August 10, 2005 as a backup date.[1] The trial court overruled appellant's motion to suppress on June 9, 2005.
 {¶ 6} On June 14, 2005, appellant's original counsel moved to withdraw from the case. The court granted the motion and next appointed the public defender to represent appellant. On June 22, 2005, the public defender moved to withdraw as counsel. The court then appointed replacement counsel on June 27, 2005. At a subsequent pretrial hearing, the court scheduled jury trial for August 10, 2005. The August 10, 2005 trial date was continued when, on July 19, 2005, the state informed the court that a key prosecution witness would be unavailable for the August 10 trial.
 {¶ 7} On August 24, 2005 appellant filed a motion in limine and a motion to dismiss the charges on speedy trial grounds. The matter proceeded to jury trial on that same date, and trial concluded on August 26, 2005. The jury found appellant guilty on all three counts, and on August 29, 2005 the trial court imposed the maximum sentence on each count. Appellant timely appealed, raising six assignments of error.[2]
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ALLOWED THE STATES [SIC] STAR WITNESS TO INDENTIFY [SIC] THE APPELLANT IN THE PRESENCE OF THE JURY EVEN THOUGH THE COURT HAD CREDIBLE INFORMATION THAT THE WITNESS OBSERVED THE APPELLANT WALKING IN THE COURTHOUSE IN SHACKLES THAT SAME DAY AND THE WITNESS HAD BEEN UNABLE TO PREVIOUSLY INDENTIFY [SIC] THE APPELLANT."
 {¶ 10} Appellant alleges that the victim was unable to identify appellant as his attacker until seeing appellant walking shackled into the courthouse before the second day of trial. Appellant contends that this identification unfairly prejudiced him.
 {¶ 11} A criminal defendant's due process rights are violated where the procedure employed to identify the accused is so suggestive that it creates the substantial likelihood of an irreparable misidentification. State v. Parker (1990),53 Ohio St.3d 82, 87; State v. Patterson, Butler App. No. CA2001-01-011, at 5-6, 2002-Ohio-2065. Appellant insists that the victim was only able to identify appellant in court as his assailant because the victim allegedly observed appellant being escorted into the courthouse in shackles. "Where a witness has been confronted by a suspect before trial, that witness' identification of the suspect will be suppressed if the confrontation procedure was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under the totality of the circumstances." State v. Brown (1988)38 Ohio St.3d 305, 310, citing Manson v. Brathwaite (1977),432 U.S. 98, 97 S.Ct. 2243.
 {¶ 12} In the present matter, however, there was no pretrial identification procedure employed. According to the victim's testimony, in fact, there was no pretrial confrontation. SeeBrown at 310. When questioned by defense counsel, the victim insisted that he did not see appellant walking into the courthouse in shackles. In addition, Deputy Connie Stanforth, the officer responsible for transporting appellant to the courthouse, testified that while she did observe the victim at the entrance to the courthouse she could not verify that the victim saw appellant at that time. With no supporting evidence, appellant cannot claim that there was an identification procedure that was unnecessarily suggestive. See id. Instead, the issue more properly entails the weight and reliability of the victim's identification of appellant. See id. at 310-11.
 {¶ 13} The victim came into direct contact with the assailant while walking through the parking lot and again when the assailant approached his truck. Although it was still dark at that hour of the morning, the victim testified that he could see his attacker first by a street lamp illuminating the parking lot and second by the interior light of his truck. The victim was able to recall specific details about his attacker including race, skin color, gender, and clothing. This description matched appellant's appearance when police detained him shortly after the attack. On cross-examination, the victim identified appellant as his assailant and expressed certainty in his recognition of appellant as his assailant. We find that this evidence reliably establishes the strength of the victim's in-court identification of appellant as his attacker.
 {¶ 14} Appellant's first assignment of error is overruled.
 {¶ 15} Assignment of Error No. 2:
 {¶ 16} "THE APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE PREJUDICIAL NATURE OF THE TESTIMONY OFFERED BY THE STATE AND THE COURTS [SIC] FAILURE TO SUSTAIN A MOTION IN LIMINE PREVENTING TESTIMONY CONCERNING THE APPELLANT'S PRIOR COCAINE USE."
 {¶ 17} Appellant claims that he was prejudiced by the prosecution's references to his use of cocaine, claiming that the state's portrayal of appellant as a "coke head" is not relevant to the issue of whether he perpetrated the attack.
 {¶ 18} Evidence of other crimes, wrongs, or acts is not admissible to show propensity, but may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. Evid.R. 404(B). Even if the evidence of appellant's cocaine use is deemed relevant, it was inadmissible if its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Evid.R. 403(A).
 {¶ 19} "The issue of whether testimony or evidence is relevant or irrelevant, confusing or misleading, is best decided by the trial judge, who is in a significantly better position to analyze the impact of the evidence on the jury." Renfro v.Black (1990), 52 Ohio St.3d 27, 31. A trial court enjoys broad discretion in admitting or excluding evidence. State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of syllabus. This court will not disturb the trial court's decision absent an abuse of discretion. State v. Maurer (1984), 15 Ohio St.3d 239, 265. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. State v. Hancock, 108 Ohio St.3d 57,2006-Ohio-106, ¶ 130.
 {¶ 20} Upon questioning, appellant initially told officers that he visited a local convenience store to purchase cold medicine on the morning of the attack. After learning that the police intended to obtain the store's surveillance tapes, appellant changed his story and said that he was going to the apartment of Britney Captain to purchase cocaine for the second time that morning. Appellant named a number of people who he claimed were at the apartment doing cocaine at that time. Captain testified to the contrary, asserting that no one purchased cocaine from her apartment on the morning of the incident. On searching the Captain apartment, experienced narcotics detectives Brian Kratzer and Michael Rover did not observe anything consistent with cocaine use or drug trafficking. In addition, appellant's admitted walking route on the morning in question placed him at the crime scene around the same time as the attack.
 {¶ 21} The testimony regarding appellant's cocaine use was not introduced to convey a drug addiction or otherwise negatively characterize appellant for engaging in illegal drug use. Rather, the statements revealed inconsistencies in appellant's alibi stories and thereby underscored appellant's credibility. In view of the fact that appellant maintained his innocence, the probative value of this evidence was thus high and outweighed the danger of unfair prejudice. Accordingly, the trial court did not abuse its discretion in permitting the state to elicit evidence regarding appellant's cocaine use.
 {¶ 22} Appellant's second assignment of error is overruled.
 {¶ 23} Assignment of Error No. 3:
 {¶ 24} "THE APPELLANT WAS DENIED A CONSTITUTIONAL RIGHT TO SPEEDY TRIAL."
 {¶ 25} Appellant maintains that his right to a speedy trial was violated when the period from his arrest to his conviction exceeded the statutory time limit. Appellant also argues that the trial court unreasonably granted a continuance of the trial where a prosecution witness was unavailable due to a scheduled vacation.
 {¶ 26} Both the United States and Ohio Constitutions guarantee a criminal defendant the right to a speedy trial.State v. Baker, 78 Ohio St.3d 108, 110, 1997-Ohio-229. The Ohio General Assembly enacted R.C. 2945.71 et seq. to provide specific time requirements in which the state must bring an accused to trial. Baker at 110. Under R.C. 2945.71(C)(2), a person against whom a felony charge is pending must be brought to trial within 270 days from the date of his arrest, not including the date of his arrest. R.C. 2945.71(E), known as the "triple count provision," states that where an accused is held in jail in lieu of bail on the pending charge, each day shall be counted as three days. State v. Davenport, Butler App. No. CA2005-01-005,2005-Ohio-6686, ¶ 7. In effect, this provision creates a 90-day speedy-trial timetable where an accused is held in jail on the pending charge. Id.
 {¶ 27} The time to bring a defendant to trial can be extended for any of the reasons enumerated in R.C. 2945.72. This includes periods of delay incurred as a result of the accused's lack of counsel or as a result of a motion filed by the accused. See R.C.2945.72(C) and (E). This also includes periods of delay encountered by the trial court's granting of a continuance, either upon the accused's own motion or otherwise. See R.C.2945.72(H). A trial court may grant the state a continuance of a trial even where the continuance extends the trial date beyond the speedy trial time limit, so long as the continuance is reasonable and necessary. See id. See, also, State v. Barnett,
Fayette App. No. CA2002-06-011, 2003-Ohio-2014, ¶ 11. In such instances, the continuance granted will not count against the state for speedy trial purposes. Barnett at ¶ 11.
 {¶ 28} Appellate review of speedy-trial issues involves a mixed question of law and fact. State v. High,143 Ohio App.3d 232, 242, 2001-Ohio-3530. A reviewing court must give due deference to the trial court's findings of fact if they are supported by competent, credible evidence, but will independently review whether the trial court correctly applied the law to the facts of the case. Id.
 {¶ 29} A review of the record reveals that appellant was brought to trial within the speedy trial limits, and that the delays were reasonable and necessary. The speedy trial period began to run on March 2, 2005, the day following appellant's arrest. Because appellant was held in jail in lieu of bail, he is credited three days for each day of incarceration. See R.C.2945.71(E). The speedy time limit was tolled when appellant lacked counsel after his attorneys requested to withdraw from the case. See R.C. 2945.72(C). The limit was also tolled when appellant filed a motion requesting discovery and a bill of particulars and when he filed a motion to suppress evidence. See R.C. 2945.72(E).
 {¶ 30} Appellant concedes that, when taking into account the aforementioned tolling events, the August 10 trial date fell within his speedy trial time. Appellant argues that the court erred in granting the state's continuance on the basis of its absent witness, thereby violating his speedy trial rights. We disagree. The trial court granted the continuance when a key prosecution witness, the victim, was unavailable to testify. See R.C. 2945.72(H). In determining whether the continuance was reasonable under the circumstances, this court examines the following factors in conjunction with any other relevant circumstances: (1) length of the delay; (2) reason for the delay; (3) defendant's assertion of his right, and (4) prejudice to the defendant. State v. O'Brien (1987), 34 Ohio St.3d 7, 10, citingBarker v. Wingo (1972), 407 U.S. 514, 530, 92 S.Ct. 2182. The continuance moved the trial date from August 10 to August 24, constituting a 14-day delay. The prosecution's request for a continuance was reasonable where its key witness, the victim, was scheduled to be on vacation during the dates originally scheduled for trial. See, e.g., State v. Saffell (1988),35 Ohio St.3d 90, 91-92. See, also, Barnett, 2003-Ohio-2014 at ¶ 11. Appellant failed to show that he suffered prejudice as a result. The trial court thus reasonably granted the state's request for a continuance, tolling the speedy trial time.
 {¶ 31} Appellant's third assignment of error is overruled.
 {¶ 32} Assignment of Error No. 5:
 {¶ 33} "THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THEREBY DENYING THE APPELLANT HIS RIGHT TO DUE PROCESS."
 {¶ 34} Appellant argues that the evidence does not credibly support his conviction. Appellant emphasizes the victim's pretrial inability to positively identify his assailant, and stresses the fact that his clothing was free of blood even though he was apprehended soon after the attack. Appellant also highlights the discovery of DNA not belonging to him on the knife used in the attack, as well as the fact that his fingerprints were not found on the knife.
 {¶ 35} To determine whether a conviction is against the manifest weight of the evidence, an appellate court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. When reviewing the evidence, an appellate court must be mindful that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 36} After thoroughly reviewing the record, we conclude that the jury did not lose its way when it found appellant guilty on all counts. The victim's description of his assailant following the attack coincided with appellant's appearance. There was a single set of footprints in the new-fallen snow which the investigating officers tracked to the apartment from which appellant shortly emerged. Both Sergeant Fithen, an experienced tracking officer, and forensic scientist Suzanne Noffsinger compared the tread on appellant's gym shoes to the single set of tracks and determined that they were a match. Noffsinger also concluded that fibers collected from appellant's clothing were consistent with those from the victim's clothing. The knife found in the dumpster near the crime scene also contained fibers consistent with the victim's clothing. According to Noffsinger's forensic report, DNA on the knife blade matched the victim's DNA profile. The dumpster in which the knife was discovered was located along the path that appellant admittedly walked on the morning of the incident. Additionally, appellant's inconsistent stories regarding his whereabouts on the morning in question also weakens his credibility and lends support to the conviction. Finally, at trial the victim positively identified appellant as his attacker.
 {¶ 37} The absence of further DNA evidence does not defeat the weight and credibility of the evidence counseling in favor of appellant's guilt. As stated, appellant highlights the fact that no blood was discovered on his clothing when he was taken into custody. Dr. Joy Leverage, a surgeon who repaired the victim's wounds at the hospital, opined that blood would not necessarily spurt forth from wounds like those inflicted upon the victim. The victim testified that blood did not spurt from his body during the attack. In fact, he did not know that he was bleeding until he had closed his truck door and then felt blood trickling down his face. The officers who investigated the scene noted only minimal amounts of blood on the ground at the crime scene itself. In view of this evidence, the absence of blood on appellant's clothing upon his apprehension does not exonerate him as a potential perpetrator of the crime.
 {¶ 38} Appellant also stresses the fact that his fingerprints were not discovered on the knife. However, according to the testimony of Detective Brian Kratzer, it is very difficult to lift fingerprints from wet surfaces. The knife was covered with a light layer of wet snow when discovered in the dumpster. Detective Kratzer testified that the weather conditions rendered fingerprint collection particularly difficult in this case. Hence, the absence of fingerprints on the weapon is not demonstrative of appellant's innocence in view of the large amount of credible evidence indicating his guilt.
 {¶ 39} Appellant's fifth assignment of error is overruled.
 {¶ 40} Assignment of Error No. 6:
 {¶ 41} "APPELLANT'S TRIAL AND PRE-TRIAL COUNSEL WAS INEFFECTIVE."
 {¶ 42} Appellant faults his original counsel for filing what he deems a boilerplate, terse suppression motion. Appellant also condemns the withdrawal of his original counsel. Additionally, appellant challenges the failure of his replacement counsel to call further defense witnesses, perform independent DNA analyses, or obtain rebuttal medical or forensic evidence. Appellant also criticizes replacement counsel for failing to object during instances of alleged prosecutorial misconduct, and for making improper statements to the jury during voir dire. Finally, appellant faults replacement counsel for meeting with him on only three occasions even though appellant faced a potential sentence of life in prison.
 {¶ 43} To determine whether counsel's performance constitutes ineffective assistance, we must find that counsel's actions fell below an objective standard of reasonableness and that appellant was prejudiced as a result. Strickland v. Washington (1984),466 U.S. 668, 687-88, 693, 104 S.Ct. 2052. Prejudice exists where appellant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Id. at 694. A strong presumption exists that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. State v. Bradley (1989),42 Ohio St.3d 136, 142, citing Strickland at 689.
 {¶ 44} First, we shall address appellant's insistence that replacement counsel was ineffective for failing to object to alleged prosecutorial misconduct. The test to determine whether prosecutorial misconduct occurred is whether the prosecutor's remarks were improper and, if so, whether they substantially affected the rights of the accused. State v. Lott (1990),51 Ohio St.3d 160, certiorari denied, 498 U.S. 1017, 111 S.Ct. 591. Appellant's contention that the prosecution in the case at bar engaged in misconduct is without merit as appellant entirely failed to point to any instances of misconduct in the record. A brief and baseless reference to prosecutorial misconduct is not sufficient to support the allegation. Because appellant has failed to draw this court's attention to any specific illustrations of prosecutorial misconduct, appellant's replacement counsel was not ineffective for failing to enter any objections on that basis.
 {¶ 45} Appellant also attacks the pretrial suppression motion as inadequate. We note that "failure to file a suppression motion does not constitute per se ineffective assistance of counsel."State v. Madrigal, 87 Ohio St.3d 378, 389, 2000-Ohio-448, citing Kimmelman v. Morrison (1986), 477 U.S. 365, 384,106 S.Ct. 2574. Such an omission signifies ineffective assistance only when the record establishes that the motion would have been successful if made. Cf. State v. Robinson (1996),108 Ohio App.3d 428, 433. In the case sub judice, appellant's original counsel did in fact file a suppression motion citing lack of probable cause for appellant's arrest and requesting the suppression of statements made by appellant during the allegedly unlawful arrest. The motion was made and was not successful. Appellant's contention is thus without merit.
 {¶ 46} A number of appellant's allegations of ineffective assistance challenge maneuvers that were the product of trial strategy. This includes replacement counsel's decision not to obtain an expert, DNA analyses, or medical analyses as well as the admission of appellant's mugshot. Even if the wisdom of these strategies was debatable, trial tactics, even "debatable trial tactics," do not constitute a denial of effective assistance of counsel. State v. Leonard, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶146. Furthermore, declining to call an expert and opting to rely on cross-examination does not amount to ineffective assistance of counsel. State v. Nicholas (1993), 66 Ohio St.3d 431, 436. We are not permitted to question the wisdom of these apparently legitimate trial tactics orchestrated by replacement counsel. SeeLeonard at ¶ 146.
 {¶ 47} Appellant also offers a number of examples of alleged ineffective assistance without citing to any support from the record. Appellant asserts that the outcome of trial would have been different had more witnesses been called on behalf of the defense, but fails to identity what witness the defense should have called. Appellant's claim that replacement counsel met with him only three times is also unsupported by the record. In addition, appellant's base assertion that the withdrawal of his original counsel prejudiced him is not supported by the record in any way.
 {¶ 48} Finally, replacement counsel's statement during voir dire telling a juror that he "loved" him did not so taint the proceeding as to constitute ineffective assistance. The outcome of the proceeding would not likely have been different absent this remark to the juror.
 {¶ 49} Appellant's sixth assignment of error is overruled.
 {¶ 50} Assignment of Error No. 7:
 {¶ 51} "IMPOSITION OF MAXIMUM SENTENCES." [SIC]
 {¶ 52} Appellant insists that the trial court improperly imposed the maximum sentence on all counts because it failed to enumerate any bases to support the finding that appellant committed the worst form of the offense. See R.C. 2929.14(C).
 {¶ 53} Although not specifically argued by appellant, we find that the Supreme Court of Ohio's decision in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, is dispositive of this issue. InFoster, the supreme court ruled that certain Ohio sentencing laws requiring judicial fact-finding prior to the imposition of nonminimum, consecutive, or maximum sentences are unconstitutional in light of Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531. As a result of the high court's severance of the applicable provisions from Ohio's sentencing code, judicial fact-finding prior to the imposition of a sentence within the basic ranges of R.C. 2929.14(A) is no longer required.Foster at paragraph two of the syllabus. See, also, State v.Mathis, 109 Ohio St.3d 54, 2006-Ohio-855, paragraph three of the syllabus.
 {¶ 54} The Foster court instructed that all cases pending on direct review in which the unconstitutional sentencing provisions were applied be remanded for resentencing. Foster at ¶ 104. Consistent with Foster's mandate, we reverse appellant's sentence and remand this case for resentencing. See, also, Statev. Miller, Montgomery App. No. 21054, 2006-Ohio-1138; State v.Howard, Hamilton App. No. C-050602, 2006-Ohio-2093, ¶ 5-6;State v. Backs, Auglaize App. No. 2-05-44, 2006-Ohio-2145, ¶ 9;State v. Richardson, Richland App. Nos. 2005CA0037 and 2005CA0047, 2006-Ohio-1851, ¶ 6-7.
 {¶ 55} Appellant's seventh assignment of error is sustained.
 {¶ 56} Having reviewed appellant's assignments of error, we reverse the trial court's judgment as to sentencing only and remand this matter for resentencing in accordance with law and consistent with this opinion.
Powell, P.J., and Young, J., concur.
[1] The court indicated that trial would be held on July 18 but only if another case, already set for trial on July 18, was settled beforehand.
[2] Appellant did not raise a fourth assignment of error. We shall thus address the assignments of error as numbered 1 to 7 in appellant's brief, skipping a fourth assignment of error.