**State v. Rhodes**
*[Cite as 8 AOA 586]*

*Case No. 90AP-289*

*Franklin County, (10th)*
*Decided November 27, 1990*

*Michael Miller, Prosecuting Attorney, and Alan C. Travis, for Appellee.*

*David J. Graeff, Vivyan, Graeff & Schumacher, for Appellant.*

RINGLAND, J.

Defendant was charged with murder (R.C. 2903.02) of his common-law wife, Annette Akins, on April 20, 1989, in their home located at 550 Van Buren. On that night, the victim had been socializing and drinking at a friend's house, and left that house to return home accompanied by another friend, Wilhemena Barnett. As the two approached Akins' home, the victim started complaining that defendant was just "playing sick," that he was actually "messing around" with her sister, and that was his real reason for being at home that night (although these accusations appear to have no basis in fact). Arriving at the apartment complex where she lived, Akins first knocked on her neighbor's door, and unsuccessfully attempted to get the woman who lived there to come outside. Next, Akins knocked on the door of her own apartment. Defendant responded by unlocking the door, and then he walked back to the bedroom where he apparently had been sleeping. Akins told Barnett that she was going to kill that, "mother fucker" (meaning the defendant) due to her belief that defendant was "fooling around" with her sister.

Barnett stepped into the apartment with Akins for a moment. In Barnett's presence, Akins turned on the kitchen light and started fumbling around in a kitchen drawer. Although Barnett did not see Akins leave the kitchen with anything in her hands, Barnett was under the impression that the victim was looking for a knife. Suspecting trouble, Barnett left the apartment almost immediately. As she walked away, she heard one of Akins' children pleading "no mama, no mama, no!"

The older of the victim's two sons, Robert, told a detective investigating his mother's death that he had been in bed, already asleep, on the night in question when he was suddenly awakened by the sound of his mother coming into the house yelling at defendant. His mother was accusing defendant of having a woman in the house while she was out. Robert told the detective that his mother first slapped defendant in the face, and then defendant retaliated by slapping her. According to Robert, the defendant was struck on the side of his head by a glass bird figurine which Akins threw at him. The next thing Robert knew, he heard his mother screaming that she had just been stabbed. At trial, Robert denied making those statements to the officer.

A coroner concluded that Akins died solely from the stab wound to her chest. He indicated that at the time of her death, the victim had .08 grams percent of alcohol in her bloodstream, as well as a drug known as hydroxyzine, commonly used for anxiety. Every witness who personally knew the victim testified that Akins had a propensity to be violent and argumentative after consuming alcohol.

At trial, defendant requested an instruction on voluntary manslaughter which the court gave. No objection was made to the instruction as to burden of proof of mitigating circumstances, being under the influence of sudden passion or in a sudden fit of rage:

"The defendant has the burden of proving by a preponderance of the evidence that he acted while under the influence of sudden passion or a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the defendant into using deadly force."[1]

The jury deliberated and defendant was found guilty of murder to which he appeals.

Defendant, Cornell Rhodes, appeals from his conviction of murder and raises the following assignments of error:

"A. When evidence is presented in a jury trial sufficient to demonstrate the mitigating circumstance for the offense of voluntary manslaughter, a trial court commits prejudicial error in instructing the jury that the accused has to prove said mitigating circum-

stance by a preponderance of the evidence, contra the accused's Sixth Amendment right to a fair trial.

"B. The verdict was against the manifest weight of the evidence."

Defendant's primary argument on appeal concerns jury instructions which required defendant to prove the mitigating circumstances by a preponderance of the evidence in order to reduce the murder charge against him to voluntary manslaughter. Defense counsel failed to make timely objection to this portion of the jury instructions; hence such objection is deemed to be waived, and reversal is not warranted in the absence of plain error. *State v. Williford* (1990), 49 Ohio St. 3d 247; Crim. R. 52. A jury instruction does not constitute plain error unless the outcome of the trial clearly would have otherwise, but for the court's erroneous instruction. *State v. Underwood* (1983), 3 Ohio St. 3d 12.

The court below erred in instructing the jury that the defendant had to prove his claimed mitigating circumstance by a preponderance of the evidence. *State v. Muscatello* (1978) 55 Ohio St. 2d 201, clearly provides by means of syllabus rule that where a defendant has elicited some evidence as to the mitigating circumstance of extreme emotional stress, he is not required to establish said circumstance either beyond a reasonable doubt or upon a preponderance of the evidence. While it has been suggested that *Muscatello* no longer controls subsequent to the revision of R.C. 2901.05 in 1978, this argument is unpersuasive. The legislature, in the process of revision, did not redefine "affirmative defense" and thus did not cause mitigating circumstances to come within the statutory definition of affirmative defense. Thus the court finds that *Muscatello* controls the case *sub judice,* and that the court below improperly placed upon the defendant the burden of persuasion as to mitigating circumstances.

As noted above, however, defendant is not entitled to a reversal unless he can show that he would have been found guilty of the lesser offense of voluntary manslaughter in the absence of the erroneous instruction.

In regard to the probability of a different outcome, it is noteworthy that defendant provided ample evidence to establish extreme emotional stress, and that the jury asked for additional clarification upon the instructions pertaining to murder, voluntary manslaughter, and involuntary manslaughter. In response to the jury's request for additional clarification, the trial judge sent a copy of the instructions relative to these offenses into the jury room.

The jury's request suggests that the jury was seriously considering the possibility of a verdict other than murder, and although this court has no means of ascertaining the source of the jury's confusion as to the instructions, it could reasonably be inferred that the jury was attempting to distinguish between murder and voluntary manslaughter since uncontradicted facts are highly suggestive of provocation.

At trial, there was some degree of conflicting testimony as to whether the defendant or the victim first availed himself or herself of a knife, and whether the defendant was acting in his own self-defense, but there is no real question as to the operative facts concerning defendant's provocation by his common-law wife. There is no testimony to contradict the fact that the victim had a drinking problem, that she got unruly and argumentative when she drank, and that she had been drinking on the night she was killed. Likewise, nothing contradicts the fact that defendant was already sleeping by the time that the victim came home, and that the victim was ready to be combative with defendant as soon as she got home. There is no doubt that defendant and victim engaged in a heated argument which quickly erupted into a violent physical struggle, and that the victim was known by friends and relatives alike as an instigator of physical violence. The description of the crime scene leads to the conclusion that a struggle did take place between. the victim and defendant, and that a glass bird figurine was used as a weapon, as the victim's older son stated when he initially talked to the detective.

Taking into consideration the victim's propensity to engage in violent and abusive conduct, and her actions in conformity therewith on the night in question, there is a probability that defendant was acting in the heat of passion. When coupled with the fact that the jury was struggling with the differences between murder, voluntary manslaughter, and involuntary manslaughter, it becomes apparent that the jury may very well have found defendant guilty of voluntary

manslaughter had it not been for the erroneous instruction as to the burden of persuasion.

For his second assignment of error, the defendant opines that the jury's verdict of murder was against the manifest weight of the evidence. When a jury verdict is being challenged as against the manifest weight of the evidence, a reviewing court must look at the whole record to determine whether sufficient evidence existed to find the defendant guilty beyond a reasonable doubt. *State v. Brown* (1988), 38 Ohio St. 3d 305. The court should exercise its discretion with much caution in regard to this matter. *State v. Woods* (1985), 25 Ohio App. 3d 35.

Factors to be taken into account when exercising this discretion include the following:

(1) the reviewing court is not required to accept as true the incredible;

(2) whether the evidence is uncontradicted;

(3) whether a witness was impeached;

(4) what was not proved;

(5) the certainty of the evidence;

(6) the reliability of the evidence;

(7) whether a witness testimony is self-serving; and

(8) whether the evidence is vague, uncertain, conflicting, or fragmentary. *State v. Mattison* (1985), 23 Ohio App. 3d 10. The state was required to show that the appellant purposely caused the death of another in order to prove murder. R.C. 2903.02(A). In the case *sub judice,* there was ample evidence to support the jury's finding that the defendant purposely caused the death of Akins; hence the verdict was not against the manifest weight of the evidence. Due to the trial court's erroneous instruction as discussed above, however, the jury was precluded from considering mitigating circumstances under a proper standard. This court concludes that if the jury instructions had not required the defendant to prove provocation by a preponderance of the evidence, the evidence would have led the jury to find that defendant was guilty of voluntary manslaughter rather than murder. All the evidence indicating that defendant was provoked by the victim is essentially uncontradicted, certain, and reliable. The state failed to present little evidence to suggest that defendant killed the victim other than as a result of the couple's heated argument. Thus the manifest weight of the evidence more appropriately supports voluntary manslaughter, even though as a technicality the elements of murder have been met.

In light of the foregoing, the court hereby holds that defendant is entitled to a reversal based upon the trial court's plain error, which in effect precluded the jury from properly considering the mitigating circumstance. The judgment of the trial court is hereby reversed, and this cause is remanded for further proceedings in accordance with law consistent with this opinion.

*Judgment reversed and cause remanded.*

WHITESIDE, J., concurs in part and dissents in part.

BOWMAN, J., dissents.

RINGLAND, J., of the Clermont County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.

WHITESIDE, J., concurring in part and dissenting in part.

I concur in the opinion with respect to the first assignment of error, and in the dissenting opinion with respect to the second assignment of error.

BOWMAN, J., dissenting.

Being unable to agree with the majority as to the disposition of the second assignment of error, I must respectfully dissent.

A reviewing court may only reverse a conviction on the grounds of insufficient evidence if it can find that construing all the evidence most favorable to the state, no reasonable mind could fail to find reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St. 2d 261, *In the Matter of Tracy L. Wright* (July 2, 1985), Franklin App. No. 84AP-1035, unreported (1985 Opinions 1958). In dissenting, I am aware that the credibility of the witnesses and the weight to be given the evidence is primarily for the trier of fact; however, upon a review of the record this would appear to be one of those rare instances where no reasonable mind could fail to find reasonable doubt as to whether or not appellant was guilty of murder. Whether or not appellant may be

guilty of some other offense is not the issue before this court. In order to find appellant guilty of murder, the jury had to find beyond a reasonable doubt that he purposefully caused the death of Annette Akins, that is, he acted with the specific intention of causing a certain result, her death. There is no dispute that Annette Akins died as the result of a stab wound to the chest and that the fatal wound occurred during an argument with appellant. However, what is in dispute is the appellant's mental state at the time Annette was stabbed.

The state's primary witness, as to the specific events which transpired immediately before her death, was the decedent's son, Robert Akins, who was nine at the time of the murder. At trial, Robert testified that he was in bed when the argument between the decedent and appellant started; that he saw appellant go to the kitchen and return with something in his hand, although he was not certain what; that he followed appellant and decedent to the bedroom and heard his mother cry out "He stabbed me ***." (Tr. 191.) However, Robert since the time of the decedent's death, has been living with his grandmother who does not like appellant and has repeatedly questioned Robert as to the events of the night of April 20, 1989. However, at 1:00 in the morning following the night of the murder, Robert was interviewed by Detective Cash of the Columbus Homicide Squad, and told Detective Cash that he had heard his mother and appellant arguing; that his mother apparently struck appellant and was in turn struck by him; that he heard his mother throw something at appellant and later heard his mother scream she had just been stabbed. Robert stated that he did not get out of bed until after the fight was over, at which time the decedent was laying on the floor. Thus, on the night of the murder when the event which had just occurred would be most clear in Robert's mind, he never stated he saw appellant with any weapon and, his mother initiated the confrontation. Further, on cross-examination designed to test Robert's ability to recall past events, Robert stated that he had no recollection of having ever been beaten or injured by his mother; however, there is evidence in the record that Robert was beaten by his mother to the extent that he was required to be hospitalized at Children's Hospital. The record is replete

with evidence as to decedent's alcohol and drug problems, her volatile temper and violent and abusive behavior toward appellant, her children, family and friends, given the fact that Robert had little recollection of something as significant as a beating that required him to be hospitalized, that he has been living with his Grandmother who dislikes appellant and who has repeatedly questioned Robert as to the events of April 20, and given the general weakness of the state's case as to the degree of culpability with which appellant acted, I would conclude the finding of guilty to murder is against the manifest weight of the evidence.

Although I concur with the majority as to the disposition of the first assignment of error, I would only state that, given the division of opinion within this court as well as in other courts, it be hoped that the Ohio Supreme Court would reconsider the issue of the burden of proof to show the mitigating circumstance of sudden passion or rage in light of its decision in *State v. Muscatello* (1978), 55 Ohio St. 2d 201, and *State v. Underwood* (1983), 3 Ohio St. 3d 12, and the effect, if any, of the amendment to R.C. 2901.05.

Therefore, I would sustain the second assignment of error and concur with remanding this case to the trial court for further proceedings.

---

[1] Although defendant claims error only as to that portion of the instructions as set forth above, the court is of the opinion these further instructions to the jury compounded the court's error:

"If you find that the state proved beyond a reasonable doubt that the defendant purposely caused the death of Annette Akins, and you find the defendant failed to prove by a preponderance of the evidence that he acted while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the defendant into using deadly force, then you must find the defendant guilty of murder.

"If you find that the state proved beyond a reasonable doubt that the defendant purposely caused the death of Annette Akins, but you also find that the defendant proved by a preponderance that he acted while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant

into using deadly force, then you must find the defendant guilty of voluntary manslaughter.

"Such passion is a mitigating circumstance, the existence of which reduces murder to voluntary manslaughter. It is not, however, an element of the offense of voluntary manslaughter. If the defendant fails to establish such passion by a preponderance, the state must still prove to you beyond a reasonable doubt all of the elements of an offense before you can find the defendant guilty of that offense." (Tr. 558-560).