## State v. Karlen
*[Cite as 8 AOA 456]*

*Case No. 14462*
*Summit County, (9th)*
*Decided December 12, 1990*

*Lynn Slaby, Prosecuting Attorney, City-County Safety Bldg., Akron, Ohio 44308, for Plaintiff.*

*Robert C. Baker, 1010 CitiCenter Bldg., 146 S. High St., Akron, Ohio 44308, for Defendant.*

QUILLIN, J.

Defendant appellant, Linda Karlen, appeals from her conviction of conspiracy to commit kidnapping, R.C. 2923.01 and R.C. 2905.01, with a firearm specification. We affirm in part and reverse in part.

Karlen's convictions arise from the kidnapping and murder of Roger Pratt. Roger Pratt and Ed Swiger were fraternity brothers and friends at Theil College in Greenville, Pennsylvania. In early 1987, Pratt and Ed burglarized two fraternity houses at Theil College. The Greenville police received a tip that both Pratt and Ed were involved in the burglaries, however, no arrests were made.

Both Pratt and Ed were employees of Old Town Furniture in Greenville. Old Town Furniture was owned by Dr. John Steele, who also owned various other businesses around Greenville. Karlen was part owner of Old Town Furniture and managed several of Steele's businesses. Karlen and Ed became romantically involved in the summer of 1987.

In early 1988, Old Town Furniture's business began to suffer. In April 1988, Ed's younger brother, Mike Swiger, asked his friend, Richard Nie, to accompany him to Greenville because Karlen wanted to install a security system in the Old Town Furniture store. Mike and Nie wore both fraternity brothers and engineering students at Case

Western Reserve University in Cleveland, Ohio.

Upon arriving in Greenville, Nie and Mike met Ed and Karlen, and all four went to the Old Town Furniture store. Karlen and Ed asked Mike and Nie to burn the store to the ground in return for furniture. In the early morning hours of May 22, 1988, Ed, Mike and Nie removed items from the old Town Furniture and then set the store on fire, burning it to the ground. Karlen subsequently submitted an insurance claim for the store and its contents.

On May 25, 1988, Greenville police officers spoke with Pratt at Pratt's mother's home in Munhall, Pennsylvania. Pratt told the officers that he and Ed were involved in the burglaries, but that he knew nothing regarding the fire at the Old Town Furniture store. When the officers left, Pratt told his mother that he had overheard that there was going to be a fire at Old Town Furniture and that Karlen knew about it.

After the police contacted Pratt, Ed also attempted to contact Pratt, however, Pratt refused to speak with Ed. On June 9, 1988, a preliminary hearing was set on Pratt's burglary charge. Karlen sent her secretary, Jody Snodgrass, to the hearing to find out what was happening at the hearing. Pratt told Snodgrass "it didn't look good" and Snodgrass reported this to Karlen.

Ed subsequently learned that Pratt was planning to visit Teresa Wakulchik, a University of Akron student in Akron, Ohio on June 17, 1988. Ed and Wakulchik were high school friends and Pratt had been dating Wakulchik since April 1988. On June 16, 1988 Karlen drove Ed and Mike to Akron to speak with Wakulchik. Wakulchik and her roommate, Caroline Luli, met Karlen and the Swigers at a McDonald's restaurant near the girls' home. The girls entered Karlen's vehicle, and Karlen drove off.

While driving, Karlen upset Wakulchik by telling Wakulchik a false story that a friend of Karlen's in Greenville was pregnant by Pratt and that Pratt had asked Karlen out on dates several times. Karlen also stated that Karlen's friend was going to have an abortion because Wakulchik liked children and she knew an abortion would upset Wakulchik.

Karlen and Ed then told Wakulchik and Luli that they had unsuccessfully attempted to contact Pratt at Pratt's mother's home in Munhall. The group then formulated a plan where Wakulchik and Luli would meet Pratt at the bus station in Akron and drive him to a desolate area near Hudson, Ohio. Ed would meet them there to speak with Pratt.

On June 17, 1988, Wakulchik and Luli met Pratt at the bus station and drove Pratt to the Hudson area under the pretense of attending a party there. The girls left Pratt at the predetermined location where he was met by Ed and Mike Swiger. Ed and Pratt began a struggle during which time Ed Swiger's gun discharged. Ed then severely beat Pratt, handcuffed him, tied his legs, and placed him in a plastic garbage bag. Swiger placed Pratt in the trunk of Mike's car and drove to Kent, Ohio to meet Karlen. Karlen and Ed then drove Mike's car, with Pratt in it, back to Karlen's home in Greenville. Pratt died sometime en route to Greenville.

Mike and his girlfriend later met Ed and Karlen at Karlen's home. The group drove to a farm owned by Dr. Steele where Ed and Mike buried Pratt's body.

Karlen, Ed Swiger, Mike Swiger, Luli and Wakulchik were later arrested and indicted on several charges. Karlen was charged and convicted of conspiracy to commit kidnapping with a firearm specification. Karlen now appeals.

### Assignment of Error I

"The trial court committed prejudicial error by allowing testimony from the decedent's attorney as to statements made to him by the decedent, Roger Pratt."

Karlen contends that the trial court erred in allowing testimony regarding statements Pratt made to his attorney prior to the murder. Karlen asserts that it was error to admit the statements because Pratt's statements made to the attorney were within the attorney-client privilege.

At trial, Karlen objected to the statements alleging that the statements were inadmissible hearsay. Karlen did not assert that the statements were privileged. Error that is not specifically objected to is waived. *State v. Brown* (1988), 38 Ohio St. 3d 305, 312. Therefore, Karlen waived any challenge to the testimony by not asserting at trial that the testimony was inadmissible due to the attorney-client privilege. The first assignment of error is overruled.

## Assignment of Error II

"The trial court committed prejudicial error by allowing testimony from the decedent's mother as to statements made to her by the decedent."

Karlen asserts that the trial court erred in admitting testimony of Pratt's conversations with his mother. Karlen contends that the conversations between Pratt and his mother concerning Pratt's future plans, Pratt's father picking Pratt up from school and Pratt's plans to travel to Akron, should have been excluded as hearsay. Nevertheless, Karlen did not specifically object To the testimony concerning these conversations thereby waiving any error on appeal. See *Brown, supra.*

Karlen, however, did object to a conversation in which Pratt stated to his mother that Karlen knew about the fire at the Old Town Furniture store in Greenville. The trial court admitted the statement as an excited utterance, an exception to the hearsay rule pursuant to Evid. R. 803(2).

Generally, a trial court enjoys broad discretion in admitting evidence, and we will not disapprove an exercise of this discretion unless it clearly has been abused and the criminal defendant has suffered material prejudice. *State v. Long* (1978), 53 Ohio St. 2d 91, 98. In order for a hearsay statement to be admissible under Evid. R. 803(2) as an excited utterance, a statement must concern some occurrence startling enough to produce a nervous excitement in the declarant, which occurrence the declarant had the opportunity to observe, and must be made before there had been time for such nervous excitement to lose a domination over his reflective faculties. *State v. Huertas* (1990), 51 Ohio St. 3d 22, 31.

In the case *sub judice,* Pratt made the statement to his mother immediately after being questioned by police regarding the burglaries and the arson. Pratt confessed to the burglaries, and Pratt's mother testified that after the police left, but prior to Pratt's statement, Pratt was very nervous and upset about the possibility of incarceration. Pratt's mother also stated that Pratt was "prancing back and forth" and on the verge of tears. Pratt further told his mother that he did not want to talk to Ed Swiger if he called, because you don't know what Ed could do if he finds out

the police were here and they asked me questions."

We hold that the trial court did not abuse its discretion in admitting Pratt's statement regarding Karlen's involvement in the arson. The trial court could properly conclude that the fear and nervousness produced by the police interview were sufficient to control Pratt's reflective faculties.

In addition, the State presented evidence of Karlen's involvement in the arson independent of Pratt's statement. Therefore, we fail to see how the statement was prejudicial to Karlen. The second assignment of error is overruled.

## Assignment of Error III

"The trial court committed prejudicial error by denying the defendant's motion for mistrial which was made in response to the prosecution's efforts to introduce elements of the occult to the jury."

Karlen asserts that the trial court erred in overruling Karlen's motion for mistrial due to the State's introduction of evidence that Karlen owned snakes and used tarot cards, such evidence inferring that Karlen was involved in the occult.

A review of the record reveals that the evidence was introduced to rebut Karlen's claim that she was an unwilling participant in the crimes due to her fear of Ed Swiger. The record does not indicate that the State was attempting to show that Karlen was involved with the occult. We hold that the evidence was relevant and the trial court did not abuse its discretion in admitting the evidence and in denying Karlen's motion for mistrial. See *State v. Sage* (1987), 31 Ohio St. 3d. 173, paragraph two of the syllabus. The third assignment of error is overruled.

## Assignments of Error

"IV. it was prejudicial error for the trial court to allow the specification to count four to proceed to trial containing the names of two co-defendants who were not named in the original count four.

"V. The trial court committed prejudicial error by denying the motion for acquittal which was made at the close of the state's case and renewed at the close of all evidence in violation of the defendant's rights as guaranteed to her by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 10 and 16 of the Ohio Constitution.

"VI. The convictions of the defendant in this case are against the manifest weight of the evidence and should be reversed. These convictions are in violation of the defendant's rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 10 and 16, of the Ohio Constitution."

The above assignments of error are interrelated and will be considered together. Karlen asserts that the trial court erred in denying Karlen's motion for acquittal on the firearm specification, and in presenting the firearm specification to the jury. Karlen contends that the specification improperly contained the names of two co-conspirators who were not named in the indictment count charging Karlen with conspiracy to commit kidnapping, and the State presented insufficient evidence that Karlen herself had a firearm on or about her person or under her control while committing the conspiracy to commit kidnapping.

The State contends that the indictment and the denial of Karlen's motion for acquittal were proper, because Karlen can be convicted of the firearm specification if one or both of the Swigers had a firearm on or about his person or under his control during the carrying out of the object of the conspiracy. The State relies upon *State v. Chapman* (1986), 21 Ohio St. 3d 41, syllabus, in which the Ohio Supreme Court held that an unarmed accomplice is subject to a firearm specification conviction, where the principal offender has a firearm in his control during the commission of the crime. However, the holding in *Chapman, supra,* was based upon the language in R.C. 2923.03(F) which provides:

"(f) Whoever violates this section is guilty of complicity in the commission of an offense, and *shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated* in terms of this section, or *in terms of the principal offense.*" (Emphasis added.) *Id.* at 42.

There is no such language in the conspiracy statute, R.C. 2923.01. On the contrary, one convicted of conspiracy under R.C. 2923.01, as contrasted with complicity under R.C. 2923.03, is not punished as severely as one who is convicted of the object of the conspiracy. See R.C. 2923.01(J).

Therefore, we hold as a matter of law that an unarmed conspirator may not be subject to a mandatory three-year term of actual incarceration under R.C. 2929.71, where one or more of the co-conspirators was armed during the commission of the object of the conspiracy. As a result, Karlen could only be convicted of the firearm specification if the jury could find that Karlen had a firearm on or about her person or under her control during her commission of the conspiracy to commit kidnapping.

Crim. R. 29(A) provides in part:

"Motion for judgment of acquittal. The court on motion of a defendant *** after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. ***."

Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St. 2d 261, syllabus. Upon a review of the entire record, we hold as a matter of law that the State failed to present sufficient evidence from which reasonable minds could conclude that Karlen had a firearm on or about her person or under her control during the conspiracy to kidnap Roger Pratt. Accordingly, the trial court erred in denying Karlen's motion for acquittal on the firearm specification.

Karlen further contends that the trial court erred in denying Karlen's motion for acquittal on the count charging Karlen with conspiracy to commit kidnapping, and also that the jury's verdict finding Karlen guilty of this charge was against the manifest weight of the evidence.

The record reveals that the State presented sufficient evidence from which reasonable minds could conclude that Karlen conspired to kidnap Roger Pratt. See R.C. 2923.01 and R.C. 2905.01. In addition, a review of the record fails to reveal that the jury clearly lost its way and created a manifest miscarriage of justice. See *State v. Martin* (1983), 20 Ohio App. 3d 172, 175; *State v. Knoefel* (Nov. 28, 1990), Lorain App. No. 90CA004828, unreported. The fourth assignment of error is

sustained. The fifth and sixth assignments of error are sustained in part and overruled in part.

The judgment of the trial court in regard to count four of the indictment charging Linda Karlen with conspiracy to commit kidnapping is affirmed. The judgment of the trial court regarding the firearm specification to count four of the indictment is reversed and vacated.

REECE, P.J., and CIRIGLIANO, J., concur.