[Cite as *State v. Ryan*, 2012-Ohio-5732.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 98101

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ERIC RYAN

DEFENDANT-APPELLANT

---

**JUDGMENT:**
**AFFIRMED**

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-536381

**BEFORE:** E. Gallagher, J., Jones, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** December 6, 2012

**ATTORNEY FOR APPELLANT**

Rick L. Ferrara
2077 East 4th Street
Second Floor
Cleveland, Ohio   44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:    John R. Kosko
Melissa Riley
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113


EILEEN A. GALLAGHER, J.:

{¶1}   Eric Ryan appeals his conviction and sentence entered in the Cuyahoga County Court of Common Pleas.   Ryan argues the trial court erred in failing to suppress identification testimony and in admitting a photo array, that the state presented insufficient evidence and committed prosecutorial misconduct during closing argument, that his conviction was against the manifest weight of the evidence and that his sentence is contrary to law.   Finding no merit to the instant appeal, we affirm Ryan's conviction and sentence.

{¶2}   This case arises out of a shooting that occurred in the evening hours of April 6, 2010, in front of an apartment building located at 10322 East 105th Street in Cleveland, Ohio.

On that night, Lashell Caldwell, Jacob Cody, Kevin Shields and Mark Morris were sitting on the stoop outside of the apartment building. Caldwell and Shields were residents of the apartment building and Cody and Mark were friends of Shields and were visiting that night. Caldwell and Cody were seated to the left of the front entrance, with Cody seated closest to the apartment entrance. Shields and Morris were seated to the right of the front entrance. Caldwell later testified that the area was well lit, with two lights above the apartment building entrance and a streetlight across the street.

{¶3} As the four individuals were sitting outside, Ryan and an unknown male approached from East 103rd Street. When Ryan was in front of the group, he pulled out a semiautomatic handgun from his waistband, pointed the gun in their direction and stated, "this is how I do it." Caldwell stated that Ryan was fairly close to her face and she stated that when he spoke, she saw that he was missing his left, front tooth.

{¶4} Cody stood and attempted to run inside the apartment building. As he fled into the building, Ryan fired two shots at Cody and then walked back to the group. Caldwell stated that the first shot was fired directly in front of her, that Cody made it inside the apartment building but Ryan followed him in, firing a second shot. Shields stated that as Ryan shot Cody, the unidentified male took Morris' watch and shorts. Shields stated that before they left the crime scene, Ryan stated "we don't play no games." The two men then left the area.

**{¶5}** Both Shields and Caldwell described Ryan as missing his front, left tooth and that he was a dark-skinned black male, approximately 5'10" and 190 pounds.

**{¶6}** Police officers and EMS technicians arrived on the scene. They found Cody lying on his back inside the doorway of the apartment building. EMS transported Cody to Huron Road Hospital, where he was pronounced dead. Police officers took statements from the remaining witnesses and later, prepared a photo array, which included Eric Ryan, a man that matched the description given by Shields and Caldwell. Both Shields and Caldwell picked Ryan from the array as the shooter.

**{¶7}** A Cuyahoga County Grand Jury indicted Ryan on the following charges: one count of aggravated murder with felony murder, notice of prior conviction, repeat violent offender and one- and three-year firearm specifications, five counts of aggravated robbery with notice of prior conviction, repeat violent offender and one- and three-year firearm specifications; three counts of kidnapping with notice of prior conviction, repeat violent offender and one- and three-year firearm specifications and one count of having weapons under disability with one- and three-year firearm specifications.

**{¶8}** The state dismissed the felony-murder specification prior to the commencement of trial. Ryan elected to have Count 10, the charge of having weapons under disability and the notice of prior conviction and repeat violent offender specifications tried to the bench. In the midst of trial, defense counsel moved for a mistrial, over the

state's objection, and the trial court granted that motion.

{¶9} Prior to the start of a second trial, defense counsel moved to suppress any evidence identifying Ryan as Cody's killer. In his motion, Ryan sought to suppress the admission of a photo array, in which his photo appeared, as well as the testimonial evidence of Lashell Caldwell and Kevin Shields. After conducting a hearing, the trial court denied Ryan's motion.

{¶10} Ryan's second trial began. After the state presented its evidence and rested, defense counsel moved for an acquittal pursuant to Crim.R. 29, which the trial court denied. During deliberations, the jury informed the trial court that they could not reach a unanimous verdict and the trial court declared a mistrial on all counts tried to the jury. The trial court, however, found Ryan guilty of having weapons while under disability with one- and three-year firearm specifications.

{¶11} Ryan's third trial began and Ryan elected to try the notice of prior conviction and repeat violent offender specifications to the court. The state presented the testimony of Lashell Caldwell, Marc Morris and Kevin Shields, who were all present when Cody was shot and each of whom identified Ryan as the individual who shot Cody. The state also presented the testimony of the medical examiner, the detectives who investigated the case, the responding officers and the investigators who processed and examined the fingerprints, blood and other evidence collected in the case.

{¶12} The defense rested without presenting the testimony of any witnesses. However, through its cross-examination of the state's witnesses, the defense alluded to the following: that Cody was a drug dealer, that Ryan proclaimed his innocence from the first interview with police officers, even offering a DNA sample and to take a polygraph examination and that police officers failed to investigate information pointing to suspects other than Ryan.

{¶13} Ryan was found guilty of aggravated murder with one- and three-year firearm specification (Count 1), three counts of aggravated robbery with one- and three-year firearm specifications (Counts 2, 3 and 5) and three counts of kidnapping with one- and three-year firearm specifications (Counts 4, 6 and 8). The jury found Ryan not guilty of two counts of aggravated robbery (Counts 7 and 9). The court found Ryan guilty of the notice of prior conviction and repeat violent offender specifications for all charges in which the jury found Ryan guilty.

{¶14} The trial court immediately proceeded to sentencing. The court merged Counts 2 and 3, (the two charges of aggravated robbery where Cody was the victim) and Counts 4 and 5, (the charges of kidnapping and aggravated robbery where Marc Morris was the victim), as well as all firearm specifications. The state elected to proceed on Counts 2 and 5, both charges of aggravated robbery, for purposes of sentencing. However, because of a procedural error, the trial court was ordered to correct the sentencing journal entry. The

trial court's corrected entry sentenced Ryan to a total prison term of 23 years to life. Specifically, the court sentenced Ryan as follows: 20 years on the charge of aggravated murder (Count 1) to be served prior to and consecutive with the three-year sentence for the merged firearm specifications, ten years on the two charges of aggravated robbery (Counts 2 and 5) and the two counts of kidnapping (Counts 6 and 8), to be served concurrent to each other and to the charge on Count 1 and two years on the charge of having weapons while under disability (Count 10) to be served concurrent to the other charges.

{¶15} As related to Count 10, the court ordered the sentence for the three-year firearm specification to run consecutive to the seven-year sentence imposed in case CR-536369. The court then ordered the prison sentence for case CR-536369 to run concurrent with the present case for an aggregate prison sentence for both cases of 23 years to life.

{¶16} Ryan appeals, asserting six assignments of error for our review.

Assignment of Error I

The trial court erred in denying Appellant's motion to suppress identification testimony.

Assignment of Error II

The trial court abused its discretion by admitting photo spreads over defense counsel objection.

Assignment of Error III

The manifest weight of the evidence did not support Appellant's convictions.

Assignment of Error IV

The state presented insufficient evidence to support Appellant's convictions.

Assignment of Error V

The trial court acted contrary to law when it imposed consecutive sentences without authority to do so under the Ohio Revised Code.

Assignment of Error VI

The state committed prosecutorial misconduct by improper comment during closing argument.

{¶17} In Ryan's first and second assignments of error,[1] he argues that the photo array that was shown to Caldwell and Shields to identify Cody's shooter was unduly suggestive and that it was error for the court to admit the identification testimony of both Caldwell and Shields, as well as admit the photo array itself, into evidence. We disagree.

{¶18} A reviewing court is bound to accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence. *State v. Page*, 8th Dist. No. 84341, 2005-Ohio-1493; *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991).

{¶19} With regards to a motion to suppress a photographic identification procedure,

---

[1]These assignments of error involve analysis of the same facts; as such, they shall be addressed contemporaneously.

the defendant bears the initial burden of establishing that the photographic identification procedure was unnecessarily suggestive. *Page*; *State v. Howell*, 8th Dist. No. 91569, 2009-Ohio-3092. If the defendant meets this burden, the court must determine whether the photographic identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; *Howell*; *Page*.

{¶20} The Supreme Court instructs courts to consider the following factors with regard to potential misidentification:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation * * *." *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; *Page*. Even if the identification procedure contained notable defects, this factor does not, per se, prevent the admissibility of the identification.

*State v. Merrill*, 22 Ohio App.3d 119, 489 N.E.2d 1057 (8th Dist.1984); *Page*; *Howell*.

{¶21} In this case, the photo array consisted of six photos. Ryan contends the array was unnecessarily suggestive, and believes that his picture stands out from the rest, because of the following: the suspect in photo number 6 displayed his teeth, showing no missing left, front tooth, the suspect in photo number 5 did not have a mustache, the suspect in photo number 4 had no hair on his chin and had visible tattoos on his neck and face; and the suspect in photo number 2 had no facial hair whatsoever. Additionally, Ryan claims that the

lighting on his photo and the suspect in photo number 1 makes it appear that he has darker skin. Thus, Ryan argues that by a process of elimination, no other candidate other than him could be selected. For the reasons that follow, we disagree.

{¶22} Lashell Caldwell testified that on the night of April 6, 2010, she was sitting on the front stoop of her apartment building with Cody, Shields and Morris. She testified that the area was well lit, with two lights above the apartment building entrance and a streetlight across the street. Caldwell stated that as they were sitting outside, Ryan and an unknown male approached the group, pointed a gun at the group and said "this is how I do it." Caldwell stated that Cody attempted to run away from the gunman but that Ryan shot him, right in front of her face. Caldwell stated that she also saw Ryan follow Cody to the apartment's entrance where he shot Cody a second time. Caldwell was clear that she had ample opportunity to observe Ryan as he shot Cody. Additionally, Caldwell stated that Ryan had a unique identifying characteristic in that he was missing his front, left tooth.

{¶23} After describing the assailant to police officers the day after the shooting, Caldwell identified Ryan from the photo array. Caldwell testified that the officers did not tell her whom to identify and that she identified Ryan from her recollection.

{¶24} Kevin Shields also identified Ryan from the photo array. Shields testified that on the night of April 6, 2010, he was sitting outside an apartment building with friends when Ryan and an unidentified male approached. Shields stated that after Ryan fired his handgun

two times, he walked back in front of the group and said "we ain't playing no games." Shields stated that he knew Ryan was the one who fired the handgun because the other male was robbing Morris of his shorts and watch. Shields stated that he had a good opportunity to observe Ryan and that he could clearly see that he was missing his left, front tooth. Shields testified that he had no problem identifying Ryan as the shooter and that the officers did not tell him whom to identify.

{¶25} Based on this testimony, we find that both Caldwell and Shields had ample time to view the assailant, that both witnesses were highly attentive to Ryan at the time of the crime and that both witnesses accurately described Ryan. Further, we have reviewed the photo array and do not find it unnecessarily suggestive. Each of the individuals had some unique characteristics but all shared similar features. The fact that some of the suspects had less or more facial hair than Ryan or that one of the suspects had visible tattoos and Ryan did not, is not impermissibly suggestive. This is particularly true when neither Caldwell nor Shields identified Ryan based on his facial hair or lack of facial tattoos. Additionally, the fact that the suspect in photo number 6 displays his teeth is also not unduly suggestive. Both Caldwell and Shields testified that they identified Ryan from the photo array based on their recollections of the crimes, not through a process of elimination based on who was missing teeth. Moreover, we find Ryan's arguments concerning the lighting of the photographs in the array to be without merit.

{¶26} Under these circumstances, we find that the photo array was not "unnecessarily suggestive" and the victims' identification of Ryan was reliable.   Accordingly, the trial court did not err in denying Ryan's motion to suppress.

{¶27} Further, we find that the trial court did not err in admitting the photo array into evidence.   A trial court has broad discretion in determining the admissibility of evidence. Evid.R. 104.   Absent an abuse of that discretion, this court will not overturn the trial court's decision.   *State v. Owens*, 3d Dist. No. 1-99-42, 1999-Ohio-898.

{¶28} Ryan incorporated all the arguments he made in the first assignment of error in support of his argument that the trial court erred in admitting the photo array into evidence. We have already determined that the photo array was not unnecessarily suggestive or inherently prejudicial and that Caldwell's and Shields' identifications of Ryan as the shooter were reliable.   Accordingly, we find no error with the court's admission.

{¶29} Ryan's first and second assignments of error are overruled.

{¶30} Although Ryan's third and fourth assignments of error involve different standards of review, we will consider them together because we find the evidence in the record applies equally to both.

{¶31} The standard of review with regard to the sufficiency of the evidence is set forth in *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), as follows:

Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of

acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.

{¶32} *Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, in which the Ohio Supreme Court held:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.)

{¶33} In evaluating a challenge based on manifest weight of the evidence, a court sits as the 13th juror, and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. As the Ohio Supreme Court declared:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."

* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." (Internal citations omitted.) *Id*. at 387.

{¶34} This court is mindful that weight of the evidence and the credibility of witnesses are primarily for the trier of fact and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether a new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." (Internal citation omitted.) *State v. Lindsey*, 87 Ohio St.3d 479, 2000-Ohio-465, 721 N.E.2d 995.

{¶35} In the present case, the jury found Ryan guilty of one count of aggravated murder with one- and three-year firearm specifications, three counts of aggravated robbery with one- and three-year firearm specifications and three counts of kidnapping with one- and

three-year firearm specifications. Additionally, the trial court found Ryan guilty of notice of prior conviction and repeat violent offender specifications for each of the above counts as well as one count of having weapons under disability with one- and three-year firearm specifications. Nonetheless, in his assignment of error regarding the sufficiency of the evidence, Ryan fails to identify the crimes for which the state presented insufficient evidence. Instead, Ryan makes a generalized argument that the state failed to produce legally sufficient identification evidence to prove Ryan committed the crimes.

{¶36} Our analysis of Ryan's first and second assignments of error disposed of any claim of invalid identification testimony. Specifically, we noted that Caldwell and Shields identified Ryan from a valid photo array and that their identifications of Ryan were reliable. Viewing the evidence in the light most favorable to the State, we conclude that the State presented sufficient evidence to identify Ryan as the person that committed the above-cited crimes.

{¶37} We further find that the trier of fact did not lose its way in convicting Ryan as indicted.

{¶38} In support of his claim that his convictions were against the manifest weight of the evidence, Ryan argues that neither Caldwell nor Shields produced reliable identification testimony and that their associations with Cody, whom they allege to be a known drug dealer, makes their testimony suspect. Additionally, Ryan argues that the physical evidence

did not support the conclusion that Ryan was the shooter. We find no merit to Ryan's arguments.

{¶39} We have previously concluded that Caldwell and Shields provided reliable identifications of Ryan as the shooter. Additionally, this court concluded that the photo array presented to Caldwell and Shields was not impermissibly suggestive. Ryan's claim that the testimony of Caldwell, Shields and Morris should not have been afforded significant probative value, is erroneous. The fact that Caldwell, Shields and Morris spent time with Cody, whom the defense allege was a "known drug dealer" was an issue of credibility for the jury to consider. Clearly, the jury observed each witness and found their testimony to be credible.

{¶40} Lastly, Ryan's argument that the lack of physical evidence tying him to the robbery, murder and kidnapping clearly shows a lack of guilt is also misplaced. While the state presented testimony that the fingerprint evidence, blood evidence and gunshot residue evidence did not directly implicate Ryan.

{¶41} The trier of fact is in the best position to weigh the evidence and the credibility of witnesses. Although Ryan wishes the outcome had been different, the jury observed each witness, heard the testimony and evidence and ultimately concluded that he was guilty. As the reviewing court, we find that the trier of fact could reasonably conclude from the substantial evidence presented by the state, that the state has proven the offenses beyond a

reasonable doubt.   Accordingly, we cannot say that the trier of fact lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.

{¶42}   Ryan's third and fourth assignments of error are overruled.

{¶43}   In Ryan's fifth assignment of error, he argues that the trial court lacked the authority to sentence him to consecutive prison sentences because of an apparent irregularity with House Bill 86, the revised   sentencing portion of the Ohio Revised Code.

{¶44} Ryan raised this identical argument in a previous appeal.   *See State v. Ryan*, 8th Dist. No. 98005, 2012-Ohio-5070.   Having fully considered Ryan's claims and supporting case law, this court overruled his argument and upheld the imposed sentence.   *Id.*  Finding no reason to divert from this authority, we overrule Ryan's fifth assigned error and uphold the imposed sentence.   *See Ryan.*

{¶45} In his sixth and final assignment of error, Ryan argues the state committed prosecutorial misconduct during its closing arguments in three separate instances: (1) by stating that a description of the shooter was provided to police on the night of the shooting; (2) by commenting on Caldwell's testimony describing Ryan's tattoo and (3) by giving personal approval of its own witnesses.

{¶46} In *State v. Bruce*, 8th Dist. No. 70982, 1997 Ohio App. LEXIS 4334 (Sept. 25, 1997), this court outlined the standard of review with regard to claims of prosecutorial

misconduct.

> Generally, conduct of a prosecuting attorney at trial shall not be grounds for reversal unless the conduct deprives the defendant of a fair trial. An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant. In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine whether, absent the improper questions or remarks, the jury would have found the appellant guilty. The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. In addition, should a defendant fail to object to the prosecutor's allegedly improper comments at trial pursuant to Crim.R. 52(B), the comments in question must rise to the level of plain error affecting the substantial rights of the defendant before this court can take notice of the error. Under a plain error analysis, reversal of a conviction is appropriate only if it can be said that, but for the alleged error, the result of the trial would clearly have been different. (Internal citations omitted.)

{¶47} Notwithstanding Ryan's contentions, this court does not find that the prosecutor's statements during closing argument can be characterized as misconduct that deprived him of his constitutional right to a fair trial. As a general rule, a prosecutor is entitled to a certain degree of latitude during closing argument. *Bruce*, *State v. Brown*, 38 Ohio St.3d 305, 528 N.E.2d 523 (1988); Moreover, as stated by this court in *Bruce,* closing arguments must be viewed in their entirety to determine whether the disputed remarks were prejudicial. *Id.*

{¶48} In this case, our review of the prosecutor's closing argument in its entirety discloses no prejudice to any of Ryan's substantial rights. While the prosecutor misstated

when police officers received a description of the shooter (the day after the shooting, not the night of), the prosecutor was not incorrect in stating that three eyewitnesses to the murder described an individual matching Ryan's description. Additionally, we find the prosecutor's reference to Caldwell's testimony that the shooter had a tattoo on his arm to be inconsequential. It is not error for the prosecutor to argue what he believes the evidence has shown and the reasonable inferences that can be drawn therefrom. *Id.*; *State v. Richey*, 64 Ohio St. 3d 353, 362, 595 N.E.2d 915 (1992). The prosecutor was simply identifying to the jury another supporting piece of identification testimony.

{¶49} Lastly, Ryan's claim that the prosecutor gave personal approval to its eyewitness testimony is unfounded. Ryan's assigned error takes several statements out of context during the prosecutor's closing argument. However, a complete review of the argument and the State's theory of the case is that Caldwell, Shields and Morris gave a description of the shooter and that description matched Ryan.

{¶50} Based on the foregoing, we decline to find prosecutorial misconduct in the present case. Ryan's sixth and final assignment of error is overruled.

{¶51} The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas

court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
EILEEN A. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
COLLEEN CONWAY COONEY, J., CONCUR