[Cite as *Continental Ents., Ltd. v. Hunt*, 2015-Ohio-5411.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102200**

## CONTINENTAL ENTERPRISES, LTD.

PLAINTIFF-APPELLANT

vs.

## FLORENCE M. HUNT

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Shaker Heights Municipal Court
Case No. 13 CVG 01264

**BEFORE:** Laster Mays, J., Celebrezze, A.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** December 24, 2015

-i-

**ATTORNEYS FOR APPELLANT**

Antonio Franceschini
23775 Commerce Park, Suite 2
Beachwood, Ohio 44122

Ted S. Friedman
32901 Station Street, #105
Solon, Ohio 44139


**ATTORNEY FOR APPELLEE**

Robert J. Zavesky
Berger & Zavesky Co. L.P.A.
Rockefeller Building, Suite 14
614 W. Superior Avenue
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

## I. INTRODUCTION

{¶1} Plaintiff-appellant Continental Enterprises, Ltd. ("Continental") sought a declaratory judgment from the Shaker Heights Municipal Court that the apartment lease signed by defendant-appellee Florence M. Hunt ("Hunt") in 2013 automatically renewed for the year 2014, thus rendering Hunt liable for past due rents. The trial court rendered judgment in favor of Hunt, and Continental appeals. We affirm.

{¶2} Continental presents three assignments of error. The first error challenges the trial court's decision that the lease's automatic renewal clause violated R.C. 5301.01. The second error challenges the trial court's finding that Hunt provided timely notice of the termination of her tenancy. The third error challenges the trial court's finding that Hunt complied with R.C. 5321.07.

{¶3} Upon a review of the App.R. 9(A) record on appeal, this court determines that the trial court incorrectly concluded that the automatic renewal clause was invalid for failure of the lease to comply with R.C. 5301.01; however, we agree that Hunt's notice sufficiently terminated the lease as of December 31, 2013. This court cannot address the merits of Continental's third assignment of error because the record is inadequate for a review of the argument Continental raises. Consequently, the trial court's decision is affirmed.

## II. BACKGROUND AND FACTS

{¶4} Continental filed its complaint seeking a declaratory judgment against Hunt on November 26, 2013. In pertinent part, the complaint alleged that the lease that Hunt signed for her apartment, "provided at paragraph 12 that it would automatically renew for an additional year unless the tenant provided written notice of termination to the landlord by certified mail" by October 31st of the current year. Continental alleged that, although Hunt "advised" Continental in October 2013 about relocating in 2014 and inquired about a month-to-month tenancy, she did not provide notice in accordance with the terms of the lease. Rather, Continental alleged in its complaint that Hunt sent a letter dated November 11, 2013, "attempting to terminate the lease." Continental sought a declaration from the court that, "the subject lease has automatically renewed pursuant to its terms for the calendar year 2014 at a rent of $1,200.00 per month * * * ."

{¶5} Hunt filed an answer that denied the pertinent allegations of the complaint. She also filed a counterclaim against Continental, alleging that Continental's failure to repair the premises had made the premises uninhabitable at times and that Continental violated R.C. 5321.04. Hunt prayed "for a ruling that the lease between the parties terminate[d] as of December 31, 2013," and for compensatory damages. Continental answered the counterclaim, and the matter proceeded to a bench trial.

{¶6} The resulting journal entry indicates the trial court heard testimony from Alan Pearlman, Continental's "managing member," and Hunt. The journal entry contained the trial court's findings of fact and conclusions of law.

{¶7} The court held that Hunt signed the original lease on November 10, 2010. Paragraph 12 of the lease provided that:

> [I]f Tenant is to vacate the premises as of December 31, 2011, Landlord must receive by October 31, 2011 Tenant's written notice to terminate * * * or the Lease will automatically renew for the one year term beginning January 1, 2012 and ending December 31, 2012 * * * .

{¶8} The trial court further observed that the lease between the parties for 2012 and 2013 automatically renewed and the rent increased in 2014. The parties "communicated mostly via emails." On October 3, 2013, Hunt sent an email to Pearlman bearing the subject heading, "RE: Nonrenewal of lease," in which she indicated that she was considering relocating in January or February 2014 and inquired about the possibility of a month-to-month rental. On November 11, 2013, Pearlman responded "via email" that Hunt's lease had automatically renewed. That same day, Hunt sent an email reply protesting that Continental had received notice of nonrenewal by email. Hunt also sent a certified letter of nonrenewal.

{¶9} The trial court made the following conclusions of law. The lease agreement was a "perpetual lease since it contains an automatic renewal clause which makes the duration indefinite and uncertain." Because the parties failed to execute the lease as required by R.C. 5301.01, the lease was invalid as a yearly lease and became a month-to-month tenancy. Hunt tendered her written notice in November 2013, thereby terminating her tenancy as of December 31, 2013.

{¶10} The trial court made two additional conclusions of law concerning the lease termination. First, even if the lease had been valid as a yearly lease, Continental

received timely written notice from Hunt about her intention to terminate the yearly tenancy; Hunt's email communication of October 3, 2013, substantially complied with the terms of the lease. Second, Continental violated R.C. 5321.04, "by failing to maintain the premises in a safe, fit, and habitable condition." Therefore, pursuant to R.C. 5321.07, Hunt's remedy was to terminate the lease.

{¶11} Based on the foregoing, the trial court rendered judgment in Hunt's favor on Continental's complaint. The court also dismissed Hunt's counterclaim.

## III. ASSIGNMENTS OF ERROR AND ANALYSIS

{¶12} Continental appeals from the trial court's decision and presents three assignments of error.

> I. The trial court erred when it concluded the lease was perpetual and therefor [sic] invalid subject to ORC 5301.01.
>
> II. The trial court erred when it concluded that Hunt gave timely notice to terminate the lease as of December 31, 2013.
>
> III. The trial court erred when it concluded that Hunt had complied with tenant's remedy pursuant to ORC 5321.07.

{¶13} In its first assignment of error, Continental argues that, because the lease contained a "definite term," i.e., "one year," it did not fall under R.C. 5301.01 requirements. Continental asserts on this basis that the trial court wrongly concluded that the lease was invalid. We agree.

{¶14} Where a lease contains an automatic renewal provision making the duration of the lease indefinite, the lease is perpetual. *Barclay Petroleum, Inc. v. Perry*, 5th Dist. Muskingum No. CA-89-7, 1990 Ohio App. LEXIS 2318 (May 31, 1990);

*Haught v. Geissinger*, 12th Dist. Clinton No. CA2008-03-010, 2009-Ohio-98, ¶ 12.    A perpetual lease is subject to the statute of conveyances execution and notarization formalities set forth at R.C. 5301.01, requiring that the lease be:

> [S]igned by the grantor, mortgagor, vendor, or lessor in the case of a deed, mortgage, land contract, or lease or shall be signed by the trustee in the case of a memorandum of trust. The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the trustee, before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgment and subscribe the official's name to the certificate of the acknowledgment.

R.C. 5301.01.    A lease that does not automatically renew for a term exceeding three years is not a perpetual lease and is exempt from R.C. 5301.01 compliance. *Barclay* at ¶ 5.

{¶15}    Though Hunt's residency was for three consecutive years, two lease agreements were executed by the parties. Each agreement provided for a one year initial term and stated that the failure of the landlord to receive written notice to terminate the lease resulted in renewal for the second stated year. Thus, the lease is not perpetual.

{¶16}    Continental's first assignment of error is sustained.

{¶17}    In its second assignment of error, Continental asserts that the trial court incorrectly determined that Hunt provided timely notice of the termination of her tenancy under the lease.    We disagree.

{¶18}    The record includes email exchanges with Pearlman and photographs documenting ongoing water issues on February 25, 2013; March 6, 2013; and October 25, 2013.    Hunt's requests to Pearlman to be compensated for the inconvenience and

damage to her property, and to be moved to another unit, were rejected. According to the trial court's findings of fact and conclusions of law, Pearlman confirmed that there were recurring leaks in the ceilings for about two years and his only explanation was that it was difficult to repair the roof throughout that time period due to weather.

{¶19} In addition to the history of habitability issues due to the roof leakage,[1] Pearlman had actual knowledge that Hunt was looking at other rental options. An October 3, 2013 email, entitled "RE: Nonrenewal of lease," from Hunt to Pearlman advised him of her relocation plans and inquired about a month-to-month tenancy, an arrangement that Pearlman summarily rejected. During that time frame, an additional leakage issue occurred. A series of correspondence followed whereby Hunt reiterated to Pearlman that she was not renewing the lease per her prior notice.

{¶20} The complaint for declaratory judgment alleges failure to timely terminate and that the notice was not sent to the proper address. The lease requires that the notice be sent via certified mail to a post office box, and not to the onsite drop box listed in the lease for payment of rent, and that it must be "received"[2] by the landlord at least 60 days prior to the end of the lease.

---

[1] A landlord's obligation to keep the premises in good repair are set forth in R.C. 5321.04. Pursuant to R.C. 5321.07, a remedy available to a tenant for a failure to resolve a repair includes termination of the lease.

[2] We observe that directing certified mail to a post office box, compared to on-site delivery where rent is paid, divests a tenant of control over when the landlord elects to "receive" the post office box mail. *See generally Ely v. Schroder*, 1st Dist. Hamilton No. C-990426, 2000 Ohio App. LEXIS 430 (Feb. 11, 2000).

**{¶21}** As the trial court observed, substantial compliance and actual knowledge of an intent to vacate the premises will suffice where a hypertechnical application would be unconscionable. *Adair v. Landis Properties*, 10th Dist. Franklin No. 08AP-139, 2008-Ohio-4593, ¶ 13; *McGowan v. DM Group* IX, 7 Ohio App.3d 349, 351-352, 455 N.E.2d 1052 (10th Dist.1982).

**{¶22}** In *Meadowbrook Dev. Corp. v. Roberts*, 8th Dist. Cuyahoga No. 79747, 2001-Ohio-4176, this court departed from its initial hard line approach on similar lease provisions adopted in *Goudreau Mgt. Co. v. Lancaster*, 8th Dist. Cuyahoga No. 65015, 1994 Ohio App. LEXIS 1208 (Mar. 24, 1994). *Goudreau* involved a lease that renewed annually subject to a 60-day written notice to vacate before the end of the lease term. *Id.* at * 4. The tenant provided oral notice more than 60 days prior to the end of the term but submitted written notice 27 days before the end of the term. *Id.*

**{¶23}** In *Goudreau*, we acknowledged that a court may use its equitable powers to relieve a tenant from the terms of a lease where the landlord is not prejudiced. *Id*. at * 5. However, we declined to adopt *McGowan's* balancing of hypertechnical compliance, purpose of termination notice provision and equity and determined that timely oral notice with untimely written notice did not constitute substantial compliance where the lease was unambiguous. *Id.* at * 7.

**{¶24}** We revisited our analysis and aligned with *McGowan* in *Meadowbrook*, *supra,* involving a similar fact pattern. The term of the lease in *Meadowbrook* was also for one-year increments that automatically renewed effective November 1, unless the

tenant provided written notice to renew at least 60 days prior to the expiration of the term. *Meadowbrook*, 8th Dist. Cuyahoga No. 79747, 2001-Ohio-4176, * 1.

{¶25} Tenant Roberts and the landlord's leasing clerk conducted ongoing conversations about the status of Roberts's purchase of a home. Roberts told the clerk in June 1999 that a purchase agreement had been executed. *Meadowbrook* at * 2. Roberts stated that she submitted a timely written notice to terminate at the clerk's request, though neither party could produce a copy. Roberts submitted an additional written notice on September 27, 1999. *Id.* The landlord responded that the lease had automatically renewed as of November 1, 1999. Roberts vacated the premises on October 31, 1999. *Meadowbrook* at * 3.

{¶26} The apartment was relet in March 2000. Meadowbrook sued for four months rent and other miscellaneous damages that were offset by the security and other deposits, plus interest. The trial court found Roberts liable for rent for one month, offset by the deposits:

> Therefore, the Court concludes that given the size of this apartment complex and the ongoing vacancy rate that as a matter of equity between the parties that Defendant's non-conforming notice did not place an additional financial burden on Plaintiff. Moreover, given the Plaintiff's policy of not allowing any month to month tenancy for any reason, it is unreasonable to suppose that ordinary people can regulate their lives to conform with the Plaintiff's lease.

*Meadowbrook* at * 4. The landlord appealed.

**{¶27}** We determined the balancing analysis in *McGowan*, 7 Ohio App.3d 349, 351-352, 455 N.E.2d 1052, to be compelling and geared toward an equitable result, finding that:

> As in *McGowan*, appellant is attempting to take advantage of a hypertechnical construction of this particular lease provision. Where a tenant has timely substantially complied, but not in writing, with the lease provision, and the landlord has actual knowledge of the tenant's intent to vacate at the expiration of the lease term, to require further written notice would be both hypertechnical and unconscionable. *McGowan*, 7 Ohio App.3d at the syllabus. It was not error therefore for the trial court to find as it did. *Accord Ballard v. KMG Investors, Ltd. Partnership*, 3d Dist. Union No. 14-92-5, 1993 Ohio App. LEXIS 3882 (Aug. 3, 1993); *Seginak v. ABC Mgt. Co.*, 11th Dist. Trumbull No. 3816, 1987 Ohio App. LEXIS 8758 (Sept. 18, 1987).
>
> Moreover, we are inclined to depart even further from *Goudreau* [*supra*] and state that, under the facts of this case, a sixty-day termination provision such as in the case at bar is not an acceptable lease provision despite its clear and unambiguous language. As stated by the municipal court, it is unreasonable to suppose that ordinary people can regulate their lives in such a manner so as to conform to a sixty-day lease termination provision.

*Meadowbrook*, 8th Dist. Cuyahoga No. 79747, 2001-Ohio-4176, * 10-11.

**{¶28}** Based on Hunt's ongoing complaints regarding the recurring roof leaks, Continental's refusal to move Hunt to a different unit due to the leaks, Continental's refusal to allow conversion to a month-to-month tenancy, and Continental's actual knowledge of Hunt's imminent departure due to written notifications, we find that Hunt substantially complied with the notice requirements and the lease terminated effective December 31, 2013. It would be "hypertechnical and unconscionable" to find that the lease extended for another year under the circumstances, and "it is unreasonable to

suppose that ordinary people can regulate their lives in such a manner so as to conform to a sixty-day lease termination provision." *Id.*

{¶29} Continental's second assignment of error is overruled.

{¶30} In its third assignment of error, Continental complains that the trial court's finding that Hunt complied with R.C. 5321.07 lacks support in the record. The argument Continental raises in this assignment of error, however, cannot be addressed in light of the fact that Continental has provided an App.R. 9(A) record to this court. Without either a transcript or a properly filed statement of evidence, an appellate court is unable to properly consider a challenge to the manifest weight of evidence to support a trial court's decision. *Ramey v. Ellis*, 8th Dist. Cuyahoga No. 80037, 2002-Ohio-3441, ¶ 12.

{¶31} "In the absence of a record, the proceedings at trial are presumed correct." *State v. Brown*, 38 Ohio St.3d 305, 314, 528 N.E.2d 523 (1988), fn. 4. The duty to provide a transcript for appellate review falls upon the appellant, who bears the burden of showing error by reference to matters in the record. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980). When the transcript necessary for resolution of the assigned error is omitted from the record, the reviewing court has nothing to review and thus, "as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Id.*

{¶32} Consequently, Continental's third assignment of error is overruled. **IV. CONCLUSION**

**{¶33}** The trial court's decision is affirmed.

It is ordered that appellee recover from appellant costs herein taxed. The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the trial court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

FRANK D. CELEBREZZE, JR., A.J., and
TIM McCORMACK, J., CONCUR